Michael Ram
(Cal. Bar No. 104805)
*mram@ramolson.com*
Jeffrey B. Cereghino
(Cal. Bar. No. 99480)
*jbc@rocklawcal.com*
**RAM, OLSON, CEREGHINO, & KOPCZYNSKI LLP**
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:   (415) 433-4949
Facsimile:   (415) 433-7311

*Attorneys for Individual and Representative*
*Plaintiffs Alex Soto and Vince Eagen*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX SOTO and VINCE EAGEN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>                    Defendant. | Case No. 3:12-cv-01377-SI<br>(Hon. Susan Illston)<br><br>**FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>Complaint Filed:   Mar. 19, 2012<br>Trial Date:   None set<br><br><u>DEMAND FOR JURY TRIAL</u> |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Alex Soto and Vince Eagen, on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE CASE

1.   The 2008, 2009, and 2010 Honda Accord vehicles (the "Class Vehicles") suffer from a systemic design defect that enables oil to enter into the engine's combustion chamber.  This defect is present when the vehicles are sold and manifests prior to the expiration of the Class Vehicles' warranty periods, causing excessive oil consumption, premature spark plug degradation, and engine malfunction.

2.   Oil is necessary to lubricate moving engine parts and flows freely through the Class Vehicles' engines.  However, there are certain areas of the engines—notably, the combustion cylinders—in which oil must not intrude in significant amounts in order for the engines to function properly and for the oil level to remain sufficient to lubricate the engines' moving parts.

3.   The systemic design defect may be the result of a defect in material or workmanship of the Class Vehicles' valve guide seals or piston rings (another type of seal).  Each of these seals is meant to keep oil out of the combustion cylinder.

4.   Alternatively, the defect may stem from a flaw in Honda's VTEC variable engine-timing system that improperly allows oil to flow into the engine's combustion cylinders.

5.   Hundreds of complaints concerning this defect appear online, including at least 130 complaints on *www.carcomplaints.com* referencing the 2008 Accord alone. Numerous complaints are available on other websites too, including the complaints forum of the National Highway Traffic Safety Administration's ("NHTSA") website.

6.   As a result of Honda's practices, Plaintiffs and the other members of the proposed class have suffered injury-in-fact, including economic damages, and have lost money or property.  Plaintiffs bring claims for violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, for violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the Magnuson-

1

FIRST AMENDED CLASS ACTION COMPLAINT

Moss Warranty Act, codified at 15 U.S.C. § 2301 *et seq.*, as well as for breach of express warranty and unjust enrichment.

## PARTIES

7.     Plaintiff Alex Soto is a resident of San Francisco, California, located in the County of San Francisco.

8.     Plaintiff Vince Eagen is a resident of Campbell, California, located in the County of Santa Clara.

9.     Defendant American Honda Motor Co., Inc. ("Honda") is a corporation organized under the laws of the State of California and headquartered in Torrance, California, located in the County of Los Angeles.  Honda is the U.S. sales, marketing, and distribution subsidiary of its Japanese parent company, Honda Motor Co., Ltd.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant Honda, on the other, are citizens of different states.

11.   This Court has jurisdiction over Honda because it maintains its principal headquarters in California; is registered to conduct business in California; has sufficient minimum contacts in California; or otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles to render the exercise of jurisdiction by this Court proper and necessary.  Moreover, Honda's wrongful conduct (as described herein) emanates from California and foreseeably affects consumers in California.  Most, if not all, of the events alleged herein occurred in or emanated from Honda's corporate headquarters located in Torrance, California.

FIRST AMENDED CLASS ACTION COMPLAINT

12.   Venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

13.   Honda markets, distributes, and warrants Honda Accord vehicles in the United States.

14.   Honda widely advertises its Accord models as safe and reliable vehicles.

15.   Honda provides owners and lessees of Class Vehicles with a New Vehicle Limited Warranty.  The New Vehicle Limited Warranty states that Honda will repair or replace, free of charge, any part that is defective in material or workmanship under normal use for 3 years or 36,000 miles, whichever comes first.

16.   Honda provides owners and lessees of Class Vehicles with a Powertrain Limited Warranty that covers, among other things, the "[c]ylinder block and head and all internal parts, … valve covers, oil pan, oil pump, intake and exhaust manifolds, … engine/powertrain, … seals and gaskets."  The Powertrain Limited Warranty states that Honda will repair or replace, free of charge, any part that is defective in material or workmanship under normal use for 5 years or 60,000 miles, whichever comes first.

17.   Additionally, federal law, 42 U.S.C. § 7541, requires Honda to provide to owners and lessees of Class Vehicles a Federal Emissions-related Defects warranty, which, among other things, requires Honda, per Honda's representation, to "warrant[] that … [each Class Vehicle] is designed, built, and equipped to conform at the time of sale with all applicable emissions standards," and "is free from defects in materials and workmanship that would cause it to fail to conform with applicable emissions requirements during the specified time and mileage period," and to diagnose and make repairs of specified components – including any spark plugs that fail before the first scheduled maintenance, as well as gaskets associated with the ignition system – at no charge to owners.  Said "specified time and mileage period" is at least 3 years or 36,000 miles.

FIRST AMENDED CLASS ACTION COMPLAINT

18.   The defect in the Class Vehicles is in the design and/or manufacture, of their engine piston rings or valve guide seals – both of which serve to limit the entry of oil into the engine's combustion cylinders – either independently or in their interaction with the VTEC system.

19.   The defect in the Class Vehicles causes oil to enter into the combustion cylinders of their engines at a higher rate and/or in greater quantities than intended.  That oil is burned, along with gasoline, in each car's combustion process.  Engines are not designed to burn oil in such amounts and/or at such rates because doing so reduces the overall supply of the protective lubricant throughout the engine and because the byproducts of the oil's combustion are corrosive or detrimental to many of the engine's parts, most notably the spark plugs.  Thus, consumers are forced to constantly monitor oil levels in their Class Vehicles.  Worse, they are forced to replace the oil at a rate far exceeding their reasonable expectations and will eventually incur bills for repairs of components damaged by the oil's corrosive byproducts.  Furthermore, the defect is manifested by the premature fouling and required replacement of spark plugs.

20.   The illustration below represents the cross-section of a generic engine combustion cylinder, with the piston toward the middle, encircled by piston rings that seal most oil out of the cylinder.  (This illustration does *not* precisely represent the Class Vehicles' engines and is merely included to assist the Court.)



FIRST AMENDED CLASS ACTION COMPLAINT

21.   Valve guide seals are much smaller, but a defect in their material, design, or manufacture can also result in the leaking of oil into the combustion cylinders where it burns, fouling the engine and depleting the oil.  The following illustrations represent cross-sections of generic engine valve assemblies, one with *good* valve guide seals that prevent oil from entering the combustion cylinder, and another with ineffective valve guides seals that do not adequately prevent oil from entering the combustion cylinder.  The central shafts running through the illustrations represent valve stems, which move up and down, at the top of the combustion cylinders, to regulate the air flowing into, or exhaust flowing out of, the cylinders.  The solid components that surround the valve stems, toward the bottom, correspond to valve *guides*, through which the valve stems pass.  And the valve guide seals are depicted in black, at the top of each valve guide.  (The circles running down the sides of the illustrations represent cross-sections of the valve springs that coil around the valve assembly.)  This illustration is *not* precisely representative of the Class Vehicles' engines and is merely included to assist the Court.



22.   Despite hundreds of online complaints and Honda's issuance of a Technical Service Bulletin (directing Honda maintenance crews to check for symptoms of the defect) and numerous ineffective software updates meant to combat the oil consumption defect, Honda refuses to correct the defect in the Class Vehicles.

FIRST AMENDED CLASS ACTION COMPLAINT

23.   Because the defective engines require repairs within 3 years and 36,000 miles, the New Vehicle Limited Warranty obligates Honda to repair the defect. However, Honda refuses to repair Class Vehicles under the New Vehicle Limited Warranty, refuses to replace the parts free of charge, and refuses to publicly acknowledge that the engines suffer from a defect.  Honda's refusal to honor the warranty harms the Plaintiffs and Class members by forcing them to incur out-of-pocket costs on repairs covered by the warranty and by forcing them to spend excessive time replacing oil and parts repeatedly damaged by the defect.

24.   Because the defective engines require repairs within 5 years and 60,000 miles, the Powertrain Limited Warranty obligates Honda to repair the defect.  However, Honda refuses to repair Class Vehicles under the Powertrain Limited Warranty, refuses to replace the parts free of charge, and refuses to publically acknowledge that the engine suffers from a defect.  Honda's refusal to honor the warranty harms the Plaintiffs and Class members by forcing them to incur out-of-pocket costs on repairs covered by the warranty and by forcing them to spend excessive time replacing oil and parts repeatedly damaged by the defect.

25.   Because the defective engines require repairs within 3 years or 36,000 miles, the Federal Emissions-related Defects Warranty requires Honda to repair the defect. However, Honda refuses to repair Class Vehicles under the Federal Emissions-related Defects Warranty, refuses to replace the parts free of charge, and refuses to publically acknowledge that the engine suffers from a defect.  Honda's refusal to honor the warranty harms the Plaintiffs and Class members by forcing them to incur out-of-pocket costs on repairs covered by the warranty.

26.   Furthermore, Honda's refusal to permanently repair or remedy the defect harms the Plaintiffs and Class members by diminishing the Class Vehicles' reputation for reliability, thereby decreasing the resale value of Class Vehicles.

27.   Consumer have lodged numerous complaints concerning the defect in Class Vehicles with the National Highway Traffic Safety Administration (NHTSA).  These complaints reflect the abnormally high rates of premature engine failure, the repeated,

FIRST AMENDED CLASS ACTION COMPLAINT

unexpected repair costs, and Honda's refusal to honor its warranties or to take responsibility for the defect.  The following complaints are unedited.

- June 18, 2009; THE CONTACT OWNS A 2008 HONDA ACCORD. THE CONTACT STATED THAT THE VEHICLE CONSUMED EXCESSIVELY LARGE AMOUNTS OF OIL. HE STATED THAT THERE WERE TWO QUARTS OF OIL USED FOR EVERY 1,000 MILES TRAVELED. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHO ADVISED THAT THEY DID NOT KNOW THE CAUSE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED AND THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE CURRENT MILEAGE WAS APPROXIMATELY 54,000 AND THE FAILURE MILEAGE WAS APPROXIMATELY 20,000. (ODI: 10400626)

- October 21, 2010; NO EVENT CAUSED FAILURE. BELIEVE IT IS JUST A FAILURE IN EQUIPMENT/MATERIAL 2. 2008 HONDA ACCORD IS BURNING AN EXCESSIVE AMOUNT OF OIL. ONE QUART EVERY THOUSAND MILES. SEVERAL OIL CHANGES HAVE HAD ALMOST NO OIL IN THE ENGINE BECAUSE THE PROBLEM WAS UNKNOWN. THE PROBLEM IS CONSTANT AND MAY BE DEFECTIVE OIL RINGS OR SOMETHING WORSE. 3. WHAT WAS SUGGESTED BY HONDA WAS REBUILDING THE ENGINE. (ODI: 10397452)

- July 14, 2009: THE CONTACT OWNS A 2008 HONDA ACCORD. THE CONTACT STATED THAT THE VEHICLE WAS LOSING OIL AND ONLY NOTICED THAT WHEN THE OIL AND CHECK ENGINE LIGHT CAME ON. THE VEHICLE WAS INSPECTED BY THE DEALER SEVERAL TIMES, BUT THE DEALER WAS UNABLE TO FIND THE SOURCE OF THE LEAK. THE DEALER PERFORMED A DIAGNOSTIC TEST AND CONFIRMED THAT THE VEHICLE WAS LOSING TWO QUARTS OF OIL EVERY 200 MILES. THE MANUFACTURER STATED THAT THEY WOULD LOOK INTO THE PROBLEM, BUT DID NOT OFFER ANY ASSISTANCE. THE FAILURE MILEAGE WAS 59,000 AND THE CURRENT MILEAGE WAS 94872. (ODI: 10377092)

- August 1, 2007; *THE CONTACT OWNS A 2008 HONDA ACCORD. THE CONTACT STATED THAT THE VEHICLE BURNED OIL FASTER THAN NORMAL. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALERSHIP WHERE THE CONTACT WAS INFORMED THE VEHICLE WAS BURNING OIL FASTER THAN NORMAL BUT STILL IN ACCORDANCE WITH INDUSTRY STANDARDS. THE VEHICLE WAS

FIRST AMENDED CLASS ACTION COMPLAINT

NOT REPAIRED AT THE TIME OF THE COMPLAINT. THE FAILURE CONTINUED TO OCCUR. THE FAILURE MILEAGE WAS APPROXIMATELY 3,000. THE CURRENT MILEAGE WAS APPROXIMATELY 37,000. (ODI: 10332669)

- Feburary 9, 2011: 2008 HONDA ACCORD EX-L WITH THE CHECK ENGINE LIGHT ON AND OFF FOR THE PAST YEAR AND A HALF. WHEN I BRING THE CAR BACK TO THE DEALER THEY SAY I HAVE NO OIL IN THE ENGINE. THIS GOES ON EVERY OTHER MONTH AND THEY HAVE NOT SOLVED THE PROBLEM. MY CAR IS STILL FORTUNATELY UNDER EXTENDED WARRANTY, BUT IS THERE MORE DAMAGE BEING DONE THAT ONCE I REACH MY WARRANTY THE CAR WILL BE WORTHLESS? THE DEALER AND AMERICAN HONDA HAVE BEEN USELESS IN THIS MATTER AND HAVE TOLD ME TO DRIVE MY CAR WITH EVERY WARNING LIGHT ON UNTIL THEY CAN FIGURE OUT HOW TO FIX IT. AT WHAT POINT IN A CAR JUST A LEMON? IF I COULDN'T TURN BACK TIME 2 YEARS I WOULD HAVE NEVER BOUGHT THIS CAR. (ODI: 10331244)

28.    Honda tells its customers that they should inspect their vehicles' oil levels every time they purchase gasoline.

29.    Regardless of how often the owner or lessee of a Class Vehicle checks the vehicle's oil level, he or she will still have to replenish his or her vehicle's oil so as to avoid damage to the engine resulting from substantial loss of oil.

30.    Numerous owners of Class Vehicles have posted complaints on the Internet.  Below is a sampling from the approximately 130 complaints on *carcomplaints.com* alone.  These complaints, which are unedited, represent the ubiquity of the defect in the Class Vehicles and, although some complaint authors are not members of the proposed class,  demonstrate Honda's systematic failure to remedy the defect in Class Vehicles.

- I have a problem with any vehicle that may be mechanically compromised when you follow the factory suggested maintenance schedule. I also have a problem with a known defect that is never mentioned until after the sale of the vehicle. The dealership stated that Honda tech line said oil consumption up to one quart every 1000 miles is acceptable. This means that the maintenance minder system is worthless, that the owners manual is wrong and that Honda appears to be making it up as they go along to cover their quality problems. I

wanted assurances in writing that this issue would not compromise resale value or engine integrity in the long run such as excessive spark plug fouling, cylinder/valving build-up, internal emission build-up or emission testing problems in the future. So far: NOTHING. Just a recommendation that I change my oil in a time frame suitable to the amount it burns.

I find it hard to believe that with all the environmental concerns, Honda doesn't have a problem with burning a lot of oil from their sloppy-pig engines. Is this how the engines were designed? Is this how they were approved for use in the USA? If that were true or if Honda wasn't trying to cover-up/ignore the issue then it should be stated in the maintenance schedule, the owners manual and discussed during the sale of the vehicle so people can make informed decisions about how they want to lubricate their engines or trash the environment.

This is my third and final Honda. American car companies are really on the way up - that's the kind of company I want to do business with, not one that is on the way down and unwilling to stand behind their product in writing. (Dave C., Tacoma, WA)

- Add me to the list of dissatisfied Honda Accord 2008 owners! I went to the dealer for an oil change and was told that the engine noise I was reporting to them was connected to low oil in the engine. After further discussion, I was told that "it is within specs for a Honda Accord engine to use up a quart every 1,000 miles". My experience with newer vehicles tells me that an oil change should occur every 5,000 miles or so.

How has Honda set back the entire auto industry!?

I am pissed because up until now I had heard great things about Hondas now with one trip to the dealer I am told that we make lemons and lower acceptable standards because our engines are subpar - ridiculous.

I took my car in for another oil change yesterday after 3,000 miles. This non dealer mechanic said I had 2.5 quarts in the engine and this was not good. I have used 2 quarts in 3,000 miles (not the worst story on this page but still crap). I told my mechanic what the dealer had said and he smiled and shook his head. I asked him if this was normal for a car engine to consume that much and he said no. The engine obviously is not working on an efficient level and this means closer monitoring, more frequent oil changes at more expense and possibly greater chance of engine damage due to low oil that is not caught beforehand. Just unacceptable - how does Honda keep a reputation when they

9

FIRST AMENDED CLASS ACTION COMPLAINT

produce this crap and spin it by saying this performance is within "our specs". (John L. Fredericksburg, VA)

- My 2009 Accord V6 is burning oil a bit more than 1 quart every 1000 miles. On a recent long trip, the engine light came on and the car started running rough. When I took the car to the dealer, they said the spark plugs were fould which was caused by a software problem in the car's engine computer. They said it was related to the excessive oil consumption. They also said a new service bulletin came out that instructs them to reprogram the computer with new software which is supposed to cure the oil consumption problem. They reprogrammed the computer and changed my spark plugs without charge. Time will tell if this fixes the problem.

  *Update from Sep 11, 2011* Well it's been a few months and it doesn't look like the oil consumption problem is fixed. My dealer has opened up an oil consumption test and I'm afraid they will not do anything if they discover that the consumption is a quart every 1000 miles or more. (SavoyKl, Dayton, OH)

- Having the same problem here.
  I bought my 08 accord (manual transmission) used last summer with 42K miles on it, and took me until now to discover this, only because I was stretching the oil change this time to 5K miles instead of traditional 3K.....I would get a rattling metal on metal sound as I shifted through the gears in the first 5-10 miles of driving...
  Talked to my mechanic, who got on the phone with American Honda directly. Honda standing by their "specs" that it is normal to burn 1 qt per 1000 miles.... Crazy and Unacceptable!
  They are doing an Oil Consumption Test for FREE for me (checking oil, documenting how much burned off, and then topping off the oil every 1000 miles for the next 3000 miles, so that I can walk into Honda with something more concrete in my hand, plus they mentioned they've logged a case with Honda on my car's behalf, so it's in "the system", (whatever that means...).

  I just hit the first 1000 miles this week, and sure enough I was 1 qt low. For now, the plan is to go to Honda after my 3K miles are up, and show them my mechanics documentation to see how they respond.

  I am disappointed that Honda hasn't come clean to acknowledge the problem and do the right thing in fixing this problem for their customers. It goes a long way in brand loyalty....I wonder how the 2008 Camry's are doing???? hmm?

FIRST AMENDED CLASS ACTION COMPLAINT

I guess Honda needs to see more complaints first...so here's one more! (Jim L. Raleigh, NC)

- I bought my Honda Accord in January 2008. It had 8 miles on it on the day I took it home. I have repeatedly taken my care to Honda to look at and see exactly how much oil it lost between oil change. 1 quart per 1000 miles!!! Give me a brake! There is no way that is normal! I am serious when I say this: Who is ready to file a Class Action against Honda? Please reply if interested. (Jennifer H. Birmingham, AL)

- I have had the oil changed every 5000 miles at Honda. Noticed the car ran smoother after an oil change, started asking if the oil level was ok before they changed it. "no problem!" well, the valvs started to rattle and the oil light went on. They said to come in for an oil consumption test. Did a few, it burns a quart of oil every thousand miles. They were super concerned the first test, said thats bad and would fix it if it was a half quart low at 1000 miles. At 1000 miles, they said "sorry, if it burns a quart or less per 1000 miles, its within factory specs. They seemed nervous. wont do a thing to fix it. If I wait the recommended 6000 miles to change the oil, it will burn the engine up! this is INSANE. They must be worried about a major recall. Horrible service, and service is why I bought the Honda! Im fighting this, getting the govt involved. Horrible. (Mark T. Grand Rapids, MI)

- Red oil warning light came on intermittently. Checked oil and barely registered on dip-stick. Added two 2 quarts to get back to half-way between the two dip-stick holes. Honda dealer could not find any leaks and asked me to bring it back in a few weeks to check oil level. When I brought it back they asked me to start oil consumption test and indicated that losing 1 quart of oil per 1,000 miles is normal. Changed oil and red oil warning light came on intermittently four weeks / 3,100 miles later. The rate measured was 1 quart per 1,550 miles which is within their published normal level. This 2008 Accord is my third Accord I have purchased since 1996 and this level of oil consumption is not normal. I currently own four Hondas and this will be my last if you do make this right. Honda, what are you going to about your problem? (Rick K. Medina, OH)

- This is the same story as everyone else. My 3 year old car is burning oil and has been for the last year. I am in the middle of the "oil consumption" test. I want to know how to end this in the quickest way. The stupid test has to be run twice, it's going to take at least a year to complete it. My red idiot oil light has come on multiple times, I have endless amounts of documentation that the car consumes oil, I've been to 2 different dealerships for help, and this continues

FIRST AMENDED CLASS ACTION COMPLAINT

on and on. IM DONE!! How do I get them to either replace the engine or buy the car back? Does anyone know, or do I really have to get a lawyer involved for help?? I had a 98 Honda civic previous to this brand new car and never had one problem with it. I shouldve never gotten rid of it. I'm definitely having buyers remorse, and will NEVER NEVER NEVER buy another Honda again. What is the point of having a warranty if the company won't stand behind it? Side note...when I told the dealership that I understand that this is probably an isolated incident (prior to me finding this website) and I just want my car fixed, the tech looked at me straight in the face and said "no its not". What the hell? STAND BEHIND YOUR PRODUCT, stop screwing your customers Honda!!

*Update from Jul 16, 2011* Around March I took the car into the dealership I requested a meeting with the territory rep. After a few weeks of being put off, I threatened to sue Honda for faliure of upholding their warrenty. Within a month I had the meeting and the car was at the dealership having the piston rings replaced along with a couple of other things. I have been checking the oil every week and there doesn't SEEM to be a problem anymore, but I guess we'll see when I take it in for the next oil change. DO NOT LET THEM WALK ALL OVER YOU! They promised to stand behind their cars when they offered a warrenty, dammit - make them!! (Stacy H. Beaverton, Oregon)

- Same problems as others have listed. Using 3 qts of oil per 3000 miles and have had one plug replaced to date. When the plug was replaced was told it was a computer problem and reprogramed it with a fix. As of this date have been told 1 qt per 1000 miles was ok and I told them I would not except that answere. Then was told a solution was due after Thanks Giving. (Possible computer problem). I do not beleave this unless there is a dump valve that the computer dumps the oil out. Waiting for Thanks Giving then heading back. This is my 5th Honda ( most with 150000 miles plus) and depending on the outcome may be the last. (Mark B. Pittsboro, IN)

- I am also having the same issue with my 2008 Honda Accord EXL. The car has 27000 miles. The oil change before the last I checked my fluids in my car and found the oil level to me 1.5 qts low. At my next oil change I asked the service manager about this but he just said that it is normal for the car to burn 1qt every 1000 miles like the rest of you stated. I am assuming Honda Corp as directed them to say this. I have had new Honda's since 1990 this is my 8th honda and this is very frustrating. They tell me they to bring the car in every 1000 miles to let them check it. I explained to them that it is terrible for them to think someone has the time to come in to the dealership every 1000 miles to have their oil checked. He was rude with me and says I asked him to help me

12

FIRST AMENDED CLASS ACTION COMPLAINT

and if I wanted the help that is what I would do. I called Honda Corp and reported this but I am sure this will not help anything. I guess we are all screwed either keep the car and the problems or trade it in and let it become someone else problem. (T.H. Shelby, NC)

- I also have a 2008 Honda Accord - we bought on the belief "car is dependable and will last 300k miles. I have 67000 highway miles in 2 1/2 years of driving to and from work, get oil changed per the Oil Life sensor. Last month I noticed the oil pressure light coming on when I would pull up to a stop light. Took to local oil change place to ask for a top off and they had to add 2 1/4 quarts - was shocked as were they. They looked and no leaks, everything was tight. I drove away thinking it was odd - I did not notice any leaks at home or white smoke when driving, I don't drive the car like a race car (its only a 4 cylinder). LOL!!! A few weeks later getting gas decided to check oil and needed to add another 1 1/2 quarts. Looked at oil and anti-freeze to see if there was odd liquids in there... nothing. Exhaust tail pipe is black and wet. I have a mechanic friend taking the car today to look at it. (John P. Barnhart, MO)

- I have a 2008 Honda Accord EX Sedan 3.2 V6 and it is burning about 1 quart of oil every 2-3k miles. At my last oil change, the person changing the oil said that when he checked the oil BEFORE the oil change, the oil wasn't even on the stick. He checked for leaks, but did not find any. He also pointed out the oil residue on my tail pipes, it was significant. I called the dealer and asked if there were any recalls on my Honda and they said no. The person also told me that Honda considers it within "normal specs" to burn 1 quart every 1k miles. I told him that was absolutely absurd, new cars should burn oil!!! I had a '92 Honda Accord EX that leaked oil (as it got much older) and I didn't need that much oil!!

  I spoke to a mechanic and he stated that it may be the piston rings. I may get the explanation wrong, but I guess the piston rings are supposed to keep the gas and oil separate and maintain a certain pressure within the piston. If that certain amount of pressure isn't maintained, then the oil will (leak?) and burn off.

  To say that I am disappointing in Honda is an understatement. I have owned a '79, '87 and '92 Honda with no major problems. I don't believe that one bad year at Honda defines the quality, but their lack of attention to the problem and customer service does. (Angie H. Lockport, IL)

- Called 3 Honda dealerships and they say it is normal to consume 1 quart of oil every 1000 is ok. Even called the main company and they said its in the specs.

FIRST AMENDED CLASS ACTION COMPLAINT

Why would you want a vehicle that burns oil how can you travel anywhere, what are you suppose to bring bunch of oil to drive anywhere???????????? (Sheryl C., Yucca Valley, CA)

- HELLO, FELLOW HONDA OWNERS!!! YOU ARE NOT ALONE. I PURCHASED A NEW 2008 HONDA ACCORD EX-V6 NAVI---LOADED!!! GREAT CAR, SO I THOUGHT. I HAD THE TYPICAL FOULED # 3 SPARK PLUG PROBLEM 2 TIMES AND MASSIVE OIL CONSUMPTION. THE HONDA DEALER FIXED EVERYTHING FREE OF CHARGE. I THEN GOT TIRED OF GOING EVERY 3 MONTHS (40 K MI.) FOR THE SAME PROBLEM, SO STUPID ME GOES UPSTAIRS DURING THE LAST SPARK PLUG ISSUE AND TRADED THE 2008 IN FOR THE NEW PROBLEM FEE 2010 ACCORD EX-V6 NAVI. IT'S BEEN APPROX. 6 MONTHS AND 12,000 TROUBLE FREE MILES. LOW AND BEHOLD THE OIL ISSUE IS ALWAYS IN THE BACK OF MY HEAD SO I GO OUTSIDE AND START CHECKING THE OIL EVERY STAURDAY AND FIND MY 2010 ACCORD IS USING OIL. I HAVE NOT NOTIFIED THE DEALER YET.

  I AM A LOYAL HONDA OWNER AND TRULY BELIEVE IN THIS COMPANY. I HAVE OWNED 7 NEW HONDAS SINCE 1992. I HAVE NEVER PURCHASED A NEW CAR FROM ANOTHER COMPANY. I WORK CRAZY HOURS AND DRIVE ALOT OF MILES. (30 K YEAR) I HAVE NEVER NEEDED A TOW TRUCK DUE TO BREAKDOWNS.

  BUT NEVER AGAIN WILL I BUY A NEW HONDA AUTOMOBILE. I WILL SEARCH FOR OTHER OPTIONS. MY HEART TELLS ME ONE THING AND MY MIND IS TELLING ME TO STAY AWAY. ( SOUND LIKE A SOAP OPERA ). QUESTIONS OR COMMENTS TO howbayne@comcast.net (Howbayne, Mahopac Falls, NY)

- At 3100 miles I had to add a quart of oil to the engine. The car has mostly highway miles and is not driven over 70 MPH. I again checked the oil after 150 miles of adding oil and noticed a drop in oil. I also have a 2003 Honda Accord EXL V6 that never uses any oil.(mike, Norwood, PA)

- Have a 2010 Honda Accord sedan V-6. I bougt it new in Feb. 2010, and at 3947 miles only had 2-1/4 quarts of oil in engine. The oil pressure light never came on, but the engine light did. I took it to the dealer and had a misfire on #3 cylinder in addition to oil deposit on #2 & #3 spark plugs, which where replaced. Honda dealer thought honda corp techies would aprove new engine but they told dealer to send me on my way and have me check my oil level

14

FIRST AMENDED CLASS ACTION COMPLAINT

every 1,000-2,000 miles. What happend to Honda reliability?
Will file for lemon law WHEN problem continues! (David, Riverbank, CA)

31.    Honda has long known that its Accord vehicles have the aforementioned defect.  Honda has exclusive access to information about the defect through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem.

32.    Notably, Honda has issued (a) specific Technical Service Bulletin(s) and Engine Control Module software updates through its dealerships' service departments, as an ineffective attempt to remedy this issue.  In contrast, the defect was not known or reasonably discoverable by the Plaintiffs and Class members prior to purchase and without experiencing the defect firsthand.

33.    Honda has actively concealed the defect from consumers.  Even when an owner or a lessee of a Class Vehicles specifically asks whether his or her vehicle suffers from a known problem, Honda's policy is to deny that there is a known problem, continue concealing the defect, and to assert that their vehicle consuming or losing as much as 1 quart of oil per 1,000 miles driven is normal.

34.    Honda directed its dealerships' service departments to maintain its campaign of active concealment through service bulletins, software updates, and a technician's telephone line.  Honda dealerships frequently performed "oil consumption tests" on Class Vehicles to placate concerned owners or lessees.  Each of these mechanisms helped to ensure that owners and lessees received a uniformly misleading response from any Honda dealership regarding the existence of the defect.

35.    Authorized by Honda to evaluate any mechanical problems that a vehicle owner may encounter, the dealerships spoke with the authority of Honda itself when refusing to admit the fact that the Class Vehicles are defective.  This relationship ensured that all Class Vehicles were serviced under Honda's direction and control and that warranty coverage was uniformly denied.

FIRST AMENDED CLASS ACTION COMPLAINT

36.     Honda knew that potential car buyers and lessees would deem the defect to be material such that reasonable consumers who knew of the defect either would have paid less for the Class Vehicles or would not have purchased or leased a Class Vehicle at all.

37.     As a result of Honda's practices, Plaintiffs and Class members purchased Class Vehicles they otherwise would not have purchased, paid more for those vehicles than they would have paid, unnecessarily paid – and will continue to pay – repair costs and oil replacement costs as a result of the defect, and suffered diminution of those vehicles' resale value.

## PLAINTIFFS' EXPERIENCES

### Plaintiff Alex Soto

38.     Plaintiff Alex Soto bought a new 2008 4-cylinder Honda Accord in October 2008 in El Salida, California.  The vehicle had only 30 miles on the odometer as a result of dealership driving.  Mr. Soto decided to purchase the vehicle because of the price and because he thought it was a safe and reliable vehicle.  Honda did not inform Mr. Soto before his purchase that the vehicle's engine was defective, that it would need to have as much as 1 quart of oil added per up to 1,000 miles driven, and that some of the engine's spark plugs would be prematurely fouled.  Mr. Soto would not have purchased the vehicle had he known those facts.

39.     In March 2011, with about 31,000 miles on his vehicle, Mr. Soto noticed a grinding noise coming from the engine.  When he arrived home, he checked the oil level and found that the vehicle's dipstick – which roughly indicates the level of oil in the engine – was completely dry.

40.     Mr. Soto contacted the Honda dealership to explain his surprise and frustration with the vehicle.  He expressed concern with driving the vehicle given the obvious defect that could harm the engine's components.  Still, the Honda technicians insisted he bring the vehicle into the dealership.  Mr. Soto purchased two quarts of oil, added them to his vehicle's engine, and brought it in for diagnosis and repair.

FIRST AMENDED CLASS ACTION COMPLAINT

41.     When Mr. Soto explained his problems to the dealership's service technician, the technician responded as though he had never heard of this problem before. He offered to run various tests in order to determine the root cause of the problem.

42.     Mr. Soto left the dealership and had only travelled three to five city blocks – mere minutes of travel – when he received a telephone call from the dealership stating that there was nothing wrong with the vehicle and that the dealership would simply change and replenish the vehicle's oil, and Mr. Soto could then continue on his way.  In disbelief that he needed an oil change, Mr. Soto pointed out that his vehicle's engine monitoring system reported that his vehicle had 67% oil life left.  The service technician responded that "that doesn't meaning anything" and assured Mr. Soto that he simply needed an oil change.

43.     Naturally, Mr. Soto assumed that the service technician simply spoke to his manager or another technician who immediately recognized the cause of the problem and the fact that Honda would not offer an acceptable remedy.  Mr. Soto was directed to return to the dealership after driving 1,000 miles as part of an "oil consumption test."  At the end of the test, the oil level was low, as Mr. Soto had lost over a quart of oil during the "consumption test."

44.     After driving for approximately another 1,000 miles, Mr. Soto brought the vehicle into the dealership again, where he was told that a software update had been released to solve the oil consumption problem.  No technician could explain to Mr. Soto how a software update would impact or reduce the level of oil consumed by his vehicle.

45.     Just 1,000 miles after receiving the software update and having his vehicle's oil replenished, Mr. Soto again checked his oil level.  Only a negligible amount of oil appeared on the dipstick.

46.     Finally, in late September 2011, Mr. Soto brought his vehicle into the dealership again as a result of oil loss.

47.     A dealer representative informed Mr. Soto that there may be a leak in his vehicle, despite the facts that Mr. Soto had never noticed any oil puddles beneath his

1   vehicle, the dealer did not notice any oil puddles beneath the vehicle, and no one could
2   specify where the leak, if one did, in fact, exist, might be.

3   48.   The technician added a dye to the oil and asked Mr. Soto to return after
4   driving another 1,000 miles.

5   49.   Upon return to the dealership, after driving just 2,000 miles more, a dealer
6   representative told Mr. Soto that his car was not leaking oil.  Further, the representative
7   said that Mr. Soto's vehicle passed two tests known as the "compression" and "leak
8   down" tests.  Nevertheless, Mr. Soto had been forced to add oil during this 2,000 mile
9   test and his vehicle was, once again, low on oil when he arrived at the dealership.

10   50.   Though the dealer stated it was normal to be low on oil when needing a
11   change, Mr. Soto was offered no explanation for his car's requiring additional oil three
12   times within 2,000 miles.

13   51.   Mr. Soto also told the dealership's service agents that he had stopped in the
14   dealership three times to add oil to his vehicle.  He received no repair or recommendation
15   to remedy this defect.

16   52.   Since these events, Mr. Soto has monitored his own oil level, replenishing
17   his vehicle's oil, whenever it runs low.

18   53.   The car continues to lose or consume excessive amounts of oil, far beyond a
19   consumer's reasonable expectations.

20   54.   Furthermore, Mr. Soto has routinely noticed carbon buildup on his exhaust
21   pipe – a telltale sign that oil, and not just gasoline, is burning in the engine where it
22   would not burn if the vehicle were not defective.  Honda Service technicians assured Mr.
23   Soto that this too was a normal occurrence.

24   55.   Honda has refused to repair any seals, rings, or other mechanisms, or
25   otherwise repair Mr. Soto's vehicle as it is required to do under the various warranties.

**Plaintiff Vince Eagen**

26
27   56.   Plaintiff Vince Eagen purchased his 2008 six-cylinder VTEC Honda Accord
28   in or around October 2008 in California.

57.     After driving his vehicle just 20,000 miles, Mr. Eagen noticed a rapid loss of oil.

58.     He immediately brought the vehicle to the Honda dealership for service, expecting that the rapid loss of oil would be resolved.  However, after having just driven 5,000 miles more, Mr. Eagen's vehicle's oil pan was dry.

59.     After bringing the car back to the dealership, he was told that losing 1 quart of oil per 1,000 miles driven is typical.

60.     Mr. Eagen has necessarily replenished his vehicle's engine's oil with a quart of oil once per month at a cost of approximately $5 per quart.

61.     In addition to direct damages from oil loss, Mr. Eagen's vehicle's spark plugs have twice become prematurely fouled as a result of oil burning in the engine's cylinders.

62.     When Mr. Eagen's vehicle had just 30,000 miles on the odometer, the engine began to misfire.  The spark plugs, valve seals, intake valve seals, and gasket head covers were replaced under warranty.

63.     However, later, when the vehicle's odometer reached approximately 55,000 miles, Mr. Eagen noticed that his engine was again misfiring.  He diagnosed the problem himself by running the codes that the vehicle provides through a database.  Using these codes, Mr. Eagen discovered that the spark plugs were once again fouled.

64.     After a local mechanic shop replaced one spark plug at a cost of about $200, Mr. Eagen decided to replace the rest himself at a cost of approximately $90.

65.     Notably, the fouled spark plugs were markedly corroded.  This was surprising to Mr. Eagen because the plugs had only been installed for about 25,000 miles.

66.     The spark plugs corroded rapidly as a result of oil burning in the engine's combustion cylinders.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action on behalf of themselves and a class of persons initially defined as follows:

> All (i) current owners or lessees of a 2008, 2009, or 2010
> Honda Accord vehicle who sought diagnosis or service
> concerning their vehicle's rate of motor oil consumption within
> any of the applicable warranty periods; and (ii) former owners
> or lessees of a 2008, 2009, or 2010 Honda Accord vehicle who
> sought diagnosis or service concerning their vehicle's rate of
> motor oil consumption within any of the applicable warranty
> periods.

(the "Class").

68.     Excluded from the Class are Honda and Honda Motor Co., Ltd.; any affiliate, parent, or subsidiary of Honda or Honda Motor Co., Ltd.; any entity in which Honda or Honda Motor Co., Ltd. has a controlling interest; any officer, director, or employee of Honda or Honda Motor Co., Ltd.; any successor or assign of Honda or Honda Motor Co., Ltd.; anyone employed by counsel for Plaintiffs in this action; any Judge to whom this case is assigned, as well as his or her immediate family and staff; and anyone who purchased a Class Vehicle for the purpose of resale.

69.     This action has been brought and may properly be maintained on behalf of the Class proposed above under Federal Rule of Civil Procedure Rule 23.

70.     <u>Numerosity</u>.  Members of the Class are so numerous that their individual joinder herein is impracticable.  Hundreds of thousands of Class Vehicles have been sold or leased in the United States, with a substantial portion of those sales occurring in California.  Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

71.     <u>Existence and predominance of common questions</u>.  Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  These common questions include the following:

a.     Whether Honda provided Plaintiffs and Class members with a vehicle inherently defective in its ability to keep oil from burning in the engine's combustion chambers;

b. Whether the fact that the engine is defective and required frequent oil replacement and early corrosion of engine components would be considered material by a reasonable consumer;

c. Whether Honda has a duty to disclose the defect to Plaintiffs and other Class members;

d. Whether Honda has violated the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, as alleged in this Complaint;

e. Whether Honda has engaged in unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code section 17200 *et seq.*, as alleged in this Complaint;

f. Whether Honda breached the express warranties by refusing to provide warranty coverage for the defect;

g. Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction; and

h. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief.

72. <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the Class, because, among other things, Plaintiffs purchased Class Vehicles, which contain the same defect found in all other Class Vehicles.

73. <u>Adequacy</u>.  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

74. <u>Superiority</u>.  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the

FIRST AMENDED CLASS ACTION COMPLAINT

prosecution of individual actions against Honda economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing myriad actions arising from the defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

75.    In the alternative, the Class may be certified because:

    a.    the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Honda;

    b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.    Honda has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et. seq.*)**

76.    On behalf of themselves and all others similarly situated, Mr. Soto and Mr. Eagen reallege, as if fully set forth, each and every allegation set forth herein.

77.    Honda is a "person" under Cal. Civ. Code section 1761(c).

78.    Plaintiffs and the other Class members are "consumers" under Cal. Civ. Code section 1761(d).

79.     Plaintiffs and the other Class members engaged in "transactions" under Cal. Civ. Code section 1761(e), including the purchase or lease of Class Vehicles from Honda and the presentation of Class Vehicles for repair or replacement of the defect to Honda.

80.     As set forth herein, Honda's acts, policies, and practices undertaken in transactions intended to result and which did result in the sale or lease of Class Vehicles, violate sections 1770(a)(5), (a)(7), (a)(9), (a)(14), and (a)(16) of the CLRA in that: (a) Honda represents that its goods have sponsorship, approval, characteristics, uses, or benefits which they do not have; (b) Honda represents that its goods are of a particular standard, quality, or grade, but are of another; (c) Honda advertises its goods with intent not to sell them as advertised; (d) Honda represents that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and (e) Honda represents that its goods have been supplied in accordance with a previous representation when they have not.

81.     The existence of the defect is a material fact.  The Plaintiffs and other Class members were unaware of the defect when they purchased the Class Vehicles. Consumers value reliability and dependability of automobiles and automobile parts, especially concerning vital protection of engine components in the Class Vehicles.  Had they known of the defect, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have done so only at lower prices.

82.     Reasonable consumers expect, among other things:

a.     New vehicles, including Class Vehicles, to be equipped with effective mechanisms for allowing the engine to effectively lubricate itself without compromising the integrity of the engine as a whole;

b.     New vehicles, including Class Vehicles, to function properly for the duration of the warranty and that defects will be covered under warranty; and

c.     New vehicles, including Class Vehicles, will not require a rebuild of the engine to replace defective seals or rings, or replacement of one quart of oil per 1,000 miles driven for the life of the vehicle.

FIRST AMENDED CLASS ACTION COMPLAINT

83.     Honda had a duty to disclose the defect in the Class Vehicles for various reasons, including that:

    a.     The defect's existence is contrary to Honda's representations and consumers' expectations;

    b.     Honda's concealment of the defect and/or Honda's failure to disclose the defect was likely to deceive reasonable consumers;

    c.     Honda intentionally concealed the defect with the intent to defraud consumers;

    d.     Honda's concealment of the defect harmed the Plaintiffs and other Class members; and

    e.     Honda never intended to fulfill its warranty obligation to repair or replace the defect or any of the damage caused thereby.

84.     As a result of Honda's practices, Plaintiffs Soto and Eagen and the other Class members have suffered harm.

85.     Pursuant to the provisions of Cal. Civ. Code § 1780, Plaintiffs seek an order enjoining Honda from the unlawful practices described herein, a declaration that Honda's conduct violates the CLRA, actual and punitive damages, and attorneys' fees and costs of litigation.

## SECOND CAUSE OF ACTION

### (For unlawful, unfair, and fraudulent business practices under California Business and Professions Code § 17200 *et seq.*)

86.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

87.     Honda's acts and practices, as alleged in this Complaint, constitute unlawful, unfair and/or fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

88.     The business practices engaged in by Honda that violate the Unfair Competition Law include failing to disclose at the point of sale, the point of repair, or otherwise, that the engine is defective.

89.    Honda engaged in unlawful business practices by violating the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; and by engaging in conduct, as alleged herein, that breaches the express warranties.

90.    Honda engaged in unfair business practices by, among other things:

a.    Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and other members of the Class;

b.    Engaging in conduct that undermines or violates the stated policies underlying the CLRA and the Magnuson-Moss Warranty Act, each of which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace; and

c.    Engaging in conduct that causes a substantial injury to consumers, not outweighed by any countervailing benefits to consumers or to competition, which the consumers could not have reasonably avoided.

91.    Honda engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive consumers acting reasonably under the circumstances.

92.    As a direct and proximate result of Honda's unfair and fraudulent business practices as alleged herein, Plaintiffs suffered injury-in-fact and lost money or property, in that they purchased or leased a vehicle they otherwise would not have purchased, paid for engine defect diagnoses, repairs, and oil replacements, and are left with Class Vehicles of diminished value and utility because of the defect.  Meanwhile, Honda has sold and leased more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

93.    Plaintiffs and Class members are entitled to equitable relief including restitution of all fees, disgorgement of all profits accruing to Honda because of its unfair, fraudulent, and deceptive practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Honda from its unfair, fraudulent, and deceitful activity.

## THIRD CAUSE OF ACTION

### (For Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)

94.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

95.    Plaintiffs and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

96.    Honda is a "supplier" and "warrantor" within the meaning of sections 2301(4)-(5).

97.    The Class Vehicles are "consumer product[s]" within the meaning of section 2301(1).

98.    Honda's express warranties are "written warrant[ies]" within the meaning of section 2301(6).

99.    Honda breached the express warranties by:

    a.    Extending a 3 year/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b.    Extending a 5 years/60,000 mile Powertrain Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    c.    Extending, per its legal obligation, the Federal Emissions-related Defects Warranty, thereby warranting to repair or replace any parts covered under that warranty at no cost to the owner or lessee;

    d.    Selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty periods, as well as the replenishment of engine oil at an excessive rate; and

FIRST AMENDED CLASS ACTION COMPLAINT

e.    Refusing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its component parts.

100.   Honda's breach of the express warranties has deprived the Plaintiffs and the other Class members of the benefit of their bargain.

101.   The amount in controversy of the Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

102.   Honda has been afforded a reasonable opportunity to cure its breach of written warranties, including when Plaintiffs and other Class members brought their vehicles in for diagnoses and repair of their defective engines.

103.   As a direct and proximate cause of Honda's breach of written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial.  Honda's conduct damaged Plaintiffs and Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value of the Class Vehicles, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## FOURTH CAUSE OF ACTION

### (For Breach of Express Warranty Under Cal. Comm. Code § 2313)

104.   Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

105.   Honda provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Honda's express warranties are express warranties under California law.

106.   The engines and their component parts were manufactured and/or installed by Honda in the Class Vehicles and are covered by the express warranties.

107.   Honda breached the express warranties by:

a.    Extending a 3 year/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to

27

FIRST AMENDED CLASS ACTION COMPLAINT

repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b.    Extending a 5 year/60,000 mile Powertrain Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

c.    Extending, per its legal obligation, the Federal Emissions-related Defects Warranty, thereby warranting to repair or replace any parts covered under that warranty at no cost to the owner or lessee;

d.    Selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty periods, as well as the replenishment of engine oil at an excessive rate; and

e.    Refusing to honor the express warranties by repairing or replacing, free of charge, the defective engine or any of its component parts.

108.   Plaintiffs notified Honda of the breach within a reasonable time and/or were not required to do so because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile.  Honda was also on notice of the defect from the complaints and service requests it received from Class members, from repairs and/or replacements of the defective engine or a component thereof, and through its own maintenance records.

109.   As a direct and proximate cause of Honda's breach, Plaintiffs and the other Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, that is, the difference between the value of the vehicle as promised and the value of the vehicle as delivered.  Additionally, Plaintiffs and the other Class members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair and replacement oil.

110.   Plaintiffs and the other Class members are entitled to legal and equitable relief against Honda, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## FIFTH CAUSE OF ACTION

### (For Unjust Enrichment)

111.   Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

112.   Defendant has been, and continues to be, unjustly enriched, to the detriment of and at the expense of Plaintiffs and Class members, as a result of its conduct directed against Plaintiffs and the Class as a whole, including the collection of money from the sale of defective 2008, 2009, and 2010 Honda Accord vehicles and the avoidance of or refusal to incur expenses associated with repair of said defective vehicles.

113.   Defendant has been unjustly benefitted through the unlawful or wrongful collection of money from the sale of defective 2008, 2009, and 2010 Honda Accord vehicles, and continues to so benefit to the detriment and at the expense of Class members.

114.   Accordingly, Defendant should not be allowed to retain the proceeds from the benefits conferred up on it by Plaintiffs and Class members, who seek disgorgement of Defendant's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution for the benefit of Plaintiffs and Class members, in an equitable and efficient fashion as the Court deems just and proper.

115.   Plaintiffs and Class members are entitled to the imposition of a constructive trust upon Defendant such that its unjust enrichment, unjust benefit, and ill-gotten gains may be allocated and distributed equitably by the Court to and for the benefit of Plaintiffs and Class members.

FIRST AMENDED CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on Plaintiffs' own behalf and on behalf of the Class, pray for judgment as follows:

    a.    For an order certifying the Plaintiff Class and appointing Plaintiffs and their counsel to represent the Class;

    b.    For an order awarding Plaintiffs and the members of the Class damages, consequential damages, specific performance, and/or rescission;

    c.    For an order awarding Plaintiffs and the members of the Class restitution and disgorgement of profits, or other equitable relief as the Court deems proper;

    d.    For an order enjoining Honda from continuing to engage in unlawful business practices as alleged herein;

    e.    For an order awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest;

    f.    For an order awarding Plaintiffs and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

    g.    For an order imposing a constructive trust over the revenues from sales of and resulting profits received by Defendant as a result of its wrongful conduct.

    h.    For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

FIRST AMENDED CLASS ACTION COMPLAINT

1   DATE:  May 18, 2012                    Respectfully submitted,

2

3                                          **TERRELL MARSHALL DAUDT**
                                             **& WILLIE PLLC**
4

5                                          **/s/** Beth E. Terrell
                                           Beth E. Terrell (Cal. Bar No. 178181)
6                                          *bterrell@tmdlegal.com*
                                           936 North 34th Street, Suite 400
7                                          Seattle, Washington  98103
                                           Telephone:   (206) 816-6603
8                                          Facsimile:   (206) 350-3528
9

10                                         Matthew J. Bonness (Cal. Bar No. 229226)
11                                         *matt@berklawdc.com*
                                           Steven N. Berk
12                                         (admission *pro hac vice* forthcoming)
13                                         *steven@berklawdc.com*
                                           **BERK LAW PLLC**
14                                         2002 Massachusetts Avenue, Northwest, Suite 100
15                                         Washington, District of Columbia  20036
16                                         Telephone:   (202) 232-7550
                                           Facsimile:   (202) 232-7556
17

18                                         Michael Ram (Cal. Bar No. 104805)
19                                         *mram@ramolson.com*
                                           Jeffrey B. Cereghino (Cal. Bar No. 99480)
20                                         *jbc@rocklawcal.com*
21                                         **RAM, OLSON, CEREGHINO, &**
                                           **KOPCZYNSKI LLP**
22                                         555 Montgomery Street, Suite 820
23                                         San Francisco, California  94111
                                           Telephone:   (415) 433-4949
24                                         Facsimile:   (415) 433-7311
25

26

27

28

---

31

FIRST AMENDED CLASS ACTION COMPLAINT

Lawrence Deutsch
(admission *pro hac vice* forthcoming)
*ldeutsch@bm.net*
Shanon Carson
(admission *pro hac vice* forthcoming)
*scarson@bm.net*
Eugene Tompkins
(admission *pro hac vice* forthcoming)
*gtompkins@bm.net*
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania  19103
Telephone:   (215)875-3062
Facsimile:    (215)875-4604

*Attorneys for Individual and Representative*
*Plaintiffs Alex Soto and Vince Eagen*

FIRST AMENDED CLASS ACTION COMPLAINT

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on this 18th day of May 2012, I electronically

filed the foregoing **First Amended Class Action Complaint** with the Clerk of the Court

using the CM/ECF system which will send notification of such filing of the following:

>Michael L. Mallow, Cal. Bar. No. 188745
>*mmallow@loeb.com*
>Darlene M. Cho, Cal. Bar. No. 251167
>*dcho@loeb.com*
>LOEB & LOEB LLP
>10100 Santa Monica Boulevard, Suite 2200
>Los Angeles, California  90067
>Telephone:  (310) 282-2000
>Facsimile:  (310) 282-2200
>
>*Attorneys for Defendant*

DATE:  May 18, 2012            **TERRELL MARSHALL DAUDT
                                 & WILLIE PLLC**

                              **/s/** Beth E. Terrell
                              Beth E. Terrell (Cal. Bar No. 178181)
                              *bterrell@tmdlegal.com*
                              936 North 34th Street, Suite 400
                              Seattle, Washington  98103
                              Telephone:  (206) 816-6603
                              Facsimile:  (206) 350-3528