MICHAEL L. MALLOW (SBN 188745)
mmallow@loeb.com
DENISE A. SMITH-MARS (SBN 215057)
dmars@loeb.com
DARLENE M. CHO (SBN 251167)
dcho@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant AMERICAN
HONDA MOTOR CO., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX SOTO and VINCE EAGEN,<br><br>          Plaintiffs,<br><br>     v.<br><br>AMERICAN HONDA MOTOR CO.,<br>INC.,<br><br>          Defendant. | Case No.: 3:12-cv-01377-SI<br><br>Assigned to Hon. Susan Illston<br><br>**AMERICAN HONDA MOTOR CO., INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AS TO PLAINTIFF VINCE EAGEN**<br><br>Date:     July 27, 2012<br>Time:    9:00 a.m.<br>Place:   Courtroom 10<br><br>Complaint Filed: March 19, 2012 |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND .................................................................2

    A.    Eagen Purchased a Honda Vehicle From an Authorized
        Dealership...................................................................................2

    B.    Eagen's Purchase Agreement Contains a Very Broad
        Arbitration Clause....................................................................3

III.  GOVERNING LEGAL STANDARD.........................................................4

IV.   ARGUMENT ......................................................................................6

    A.    The "Clear and Unmistakable" Terms of the Purchase
        Agreement Allocate to the Arbitrator the Interpretation, Scope,
        and Applicability of the Arbitration Clause – Including
        Whether It Encompasses Claims Against AHM .................................6

    B.    The Arbitration Clause Explicitly Encompasses Disputes With
        Third Parties ......................................................................8

    C.    AHM Can Enforce the Arbitration Clause Under the Doctrine
        of Equitable Estoppel..............................................................8

        1.    On Facts Analogous to Those in the Instant Case,
            Courts Have Applied the Doctrine of Equitable
            Estoppel and Compelled Arbitration .........................................9

        2.    Here, Plaintiff's Claims and Allegations "Presume the
            Existence of," "Arise out of" and "Relate Directly to"
            the Purchase Agreement .........................................................13

            a.    Eagen's Claim for Violation of the CLRA Arises
               Under the Purchase Agreement.....................................14

            b.    Eagen's Claim for Violation of the UCL Arises
                Under the Purchase Agreement.....................................15

            c.    Eagen's Claims for Breach of Written Warranty
                and Express Warranty Arise Under the Purchase
                Agreement ..................................................................16

        3.    Plaintiff Has Raised Allegations of "Substantially
            Interdependent and Concerted Misconduct" by AHM
            and Its Authorized Dealers......................................................18

    D.    AHM Can Enforce the Arbitration Clause Because Its
        Subsidiary Entered Into the Purchase Agreement............................19

V.    CONCLUSION ..................................................................................20

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-CV-01377-SI

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agnew v. Honda Motor Co., Ltd.*,
   No. CV 08-01433 DFH, 2009 WL 1813783
   (S.D. Ind. May 20, 2009) ............................................................ 10, 11, 12, 14

*Air Line Pilots Ass'n, Int'l v. Midwest Exp. Airlines, Inc.*,
   279 F.3d 553 (7th Cir. 2002).................................................................7

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)........................................................................18

*Am. Bankers Ins. Group, Inc. v. Long*,
   453 F.3d 623 (4th Cir. 2006)....................................................... 13, 14

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007)....................................................passim

*Anderson v. Pitney Bowes, Inc.*,
   No. C 04-4808 SBA, 2005 WL 1048700, at *2
   (N.D. Cal. May 4, 2005) .................................................................6, 7

*In re Apple & AT & TM Antitrust Litig.*,
   826 F. Supp. 2d 1168 (N.D. Cal. 2011)
   *motion to certify appeal granted*, C 07-05152 JW,
   2012 WL 293703 (N.D. Cal. Feb. 1, 2012) ....................................................5, 9

*In re Apple iPhone 3G Products Liab. Litig.*,
   MDL C 09-02045 JW, 2012 WL 1622643
   (N.D. Cal. May 9, 2012) ................................................................9

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011)....................................................................5

*AT&T Tech., Inc. v. Communications Workers of Am.*,
   475 U.S. 643 (1986)....................................................................5, 6, 7

*Boucher v. Alliance Title Co., Inc.*,
   127 Cal. App. 4th 262 (2005)...................................................... 10, 14

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004)...........................................................20

*Britton v. Co-op Banking Group*,
  4 F.3d 742 (9th Cir.1993).....................................................................7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000).................................................................7

*Choctaw Generation Ltd. P'ship. v. Am. Home Assurance Co.*,
  271 F.3d 403 (2d Cir. 2001)...................................................................8

*Clayworth v. Pfizer, Inc.*,
  49 Cal. 4th 758 (2010) .......................................................................15

*Comedy Club, Inc. v. Improv West Assoc.*,
  553 F.3d 1277 (9th Cir. 2009)................................................................5

*Estrella v. Freedom Fin.*,
  No. C 09-03156 SI, 2011 WL 2633643
  (N.D. Cal. July 5, 2011) .....................................................................5

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)..........................................................................6

*Ford Motor Co. v. Ables*,
  207 Fed. App'x 443 (5th Cir. 2006) ..........................................................9

*Garcia v. Stonehenge, Ltd.*,
  C-97-4368-VRW, 1998 WL 118177
  (N.D. Cal. Mar. 2, 1998) ....................................................................20

*Goodwin v. Ford Motor Credit Co.*,
  970 F. Supp. 1007 (M.D. Ala. 1997)..........................................................10

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003)..........................................................................6

*Grigson v. Creative Artists Agency L.L.C.*,
  210 F.3d 524 (5th Cir. 2000).................................................................8

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-CV-01377-SI

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Hall St. Associates, LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008)...................................................................................5

*Hansen v. KPMG LLP*,
    No. CV 04-10525 GLT, 2005 WL 6051705
    (C.D. Cal. March 29, 2005)..................................................................9, 18

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006)...................................................9

*Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*,
    659 F.2d 836 (7th Cir. 1981).............................................................8, 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    12 F.3d 908 (9th Cir. 1993)......................................................................5

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
    863 F.2d 315 (4th Cir. 1988)....................................................................8

*Lau v. Mercedes-Benz USA, LLC*,
    CV 11-1940 MEJ, 2012 WL 370557
    (N.D. Cal. Jan. 31, 2012) ..............................................................passim

*Lawson v. Life of the S. Ins. Co.*,
    648 F.3d 1166 (11th Cir. 2011)................................................................8

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185 (9th Cir. 1986)................................................................20

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)....................................................................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983)..................................................................................4, 5

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999)...........................................................8, 19

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009)..................................................................5, 8, 18

*New England Mech., Inc. v. Laborers Local Union 294*,
909 F.2d 1339 (9th Cir. 1990)....................................................................7

*Robinson v. Isaacs*,
11CV1021 JLS RBB, 2011 WL 4862420
(S.D. Cal. Oct. 12, 2011)..........................................................................14

*Rubin Bros. Footwear, Inc. v. Chemical Bank*,
119 B.R. 416 (S.D.N.Y.1990).....................................................................20

*United Broth. of Carpenters and Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*,
94 F.3d 1308 (9th Cir. 1996)......................................................................7

*Volt Info. Sciences Inc. v. Bd. of Trustees of t
he Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989)....................................................................................5

*Wagner v. Stratton Oakmont, Inc.*,
83 F.3d 1046 (9th Cir. 1996)......................................................................5

**STATUTES**

9 U.S.C. § 1 .....................................................................................................4

15 U.S.C. § 2301..........................................................................................1, 16

9 U.S.C.A. § 2.................................................................................................4

9 U.S.C.A. § 3.................................................................................................6

Cal. Bus. & Prof. Code § 17200...................................................................1

Cal. Bus. & Prof. Code § 17204...................................................................15

Cal. Civ. Code § 1750....................................................................................1

Cal. Civ. Code § 1761(e) ..............................................................................14

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

v

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1

**TABLE OF AUTHORITIES (CONT'D)**

2
<u>Page(s)</u>

3
Cal. Civ. Code § 2330..............................................................................20

4
Cal. Com. Code § 2313...................................................... 1, 14, 15, 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

vi

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No.: 3:12-cv-01377-SI

# I.    INTRODUCTION

When he bought the American Honda Motor Co., Inc. ("AHM") vehicle that underlies his claims here, plaintiff Vince Eagen ("Plaintiff" or "Eagen") agreed to arbitrate, rather than litigate, the claims he now presses in this Court.  The agreement that Eagen executed for the purchase of his vehicle (the "Purchase Agreement") states, in relevant part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*See* Declaration of Michael L. Mallow, dated June 8, 2012 ("Mallow Decl."), Ex. A at 6 (the Purchase Agreement).

Disregarding the terms of the Purchase Agreement, Eagen now appears as one of two named plaintiffs who bring this nationwide class action complaint to recover damages as a result of an alleged defect in the 2008, 2009, and 2010 model year Honda Accord vehicles (collectively, "the Honda Vehicles").  Eagen alleges that the Honda Vehicles suffer from a systemic design and/or manufacturing defect that causes oil to enter into the combustion cylinders of their engines in greater quantities than intended, resulting in excessive oil consumption.  Eagen alleges claims for (1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*., (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., (3) breach of written warranty under the Magnuson-Moss Warranty Act, codified at 15 U.S.C. § 2301 *et seq*., (4) breach of express warranty under Cal. Com. Code §2313, and (5) unjust enrichment.

In light of the explicit reference contained in the arbitration clause to claims

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

1

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-CV-01377-SI

involving a "**relationship with third parties who do not sign this contract**" (Mallow Decl., Ex. A at 6), as well as relevant authority in this district, Eagen must arbitrate his claims against AHM even though AHM is not a signatory to the Purchase Agreement.  Eagen cannot rely on the existence of the Purchase Agreement and retain its benefits, yet avoid the application of the arbitration clause to claims that presume the existence of the Purchase Agreement.  Without the Purchase Agreement through which Eagen became a buyer of a Honda Vehicle, Eagen would not have standing to bring *any* of his claims against AHM.

In light of the foregoing, AHM respectfully moves to compel individual arbitration of Eagen's claims in accordance with the terms of his Purchase Agreement.  AHM also requests that this Court stay this action as to plaintiff Eagen pending the outcome of the arbitration.

## II.   FACTUAL BACKGROUND

### A.   Eagen Purchased a Honda Vehicle From an Authorized Dealership

On October 21, 2008, Eagen executed a Retail Installment Sale Contract (Purchase Agreement) to purchase a 2008 Honda Accord Sedan.  The Purchase Agreement set forth the terms pursuant to which Eagen agreed to purchase his Honda Vehicle, including, among other things, the total sale price, the dollar amount to be financed, and the number of installment payments.  *See* Mallow Decl., Ex. A at 1.

The Purchase Agreement was signed by Eagen and San Leandro Honda, the dealership from which Eagen purchased his Honda Vehicle.  *Id.*, Ex. A at 2-3. Eagen signed the Purchase Agreement subject to the following acknowledgment, which appeared in bold and all capital letters, just above Eagen's signature:

**YOU AGREE TO THE TERMS OF THIS CONTRACT.  YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.  YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE**

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

2

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE No.: 3:12-cv-01377-SI

**ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW.  YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.**

*Id.*, Ex. A at 3 (bold and capitalization in original).

San Leandro Honda assigned its interest in the Purchase Agreement to American Honda Finance Corp., Inc. ("AHFC").  *See id.*, Ex. A at 6.  AHFC is a wholly-owned subsidiary of AHM.  Declaration of Anthony G. Oborny, dated June 8, 2012 ("Oborny Decl."), ¶ 2.

**B.     Eagen's Purchase Agreement Contains a Very Broad Arbitration Clause**

Eagen agreed to arbitrate claims and disputes such as those in the instant case. The Purchase Agreement contains a prominent and very broad arbitration clause:

**ARBITRATION CLAUSE**
**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2.    IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3.  DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

3

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

Mallow Decl., Ex. A at 6 (bold and capitalization in original).

Eagen further agreed that any claim or dispute would be arbitrated on an individual basis, as opposed to a class basis, and that federal law, not state law, governs any arbitration:

> Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action.

> \* \* \*

> Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.

> \* \* \*

> You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court.  Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. . . .  If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.  If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

*Id.*

## III.   GOVERNING LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A. § 2 (West).  "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).  Consequently, the FAA creates a body of federal substantive law governing arbitrability, "applicable to any arbitration agreement within the coverage of the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

4

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1   Act." *Id.*

2       This strong federal policy favoring arbitration for dispute resolution "requires

3   a liberal reading of arbitration agreements." *Id.* at 22 n.27. "[A]ny doubts

4   concerning the scope of arbitrable issues should be resolved in favor of

5   arbitration[.]" *Id.* at 24-25; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*,

6   514 U.S. 52, 62 (1995) (quoting *Volt Info. Sciences Inc. v. Bd. of Trustees of the*

7   *Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)); *Intel Corp. v. Advanced*

8   *Micro Devices, Inc.*, 12 F.3d 908, 914 (9th Cir. 1993); *Mundi v. Union Sec. Life Ins.*

9   *Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont,*

10   *Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).[1] Accordingly, "[f]ederal courts are

11   required to rigorously enforce an agreement to arbitrate," *Estrella v. Freedom Fin.*,

12   No. C 09-03156 SI, 2011 WL 2633643, at *3 (N.D. Cal. July 5, 2011) (citing *Hall*

13   *St. Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)), and must do so

14   "according to [the agreement's] terms." *AT&T Mobility LLC v. Concepcion*, 131 S.

15   Ct. 1740, 1748 (2011).

16       An order to arbitrate should not be denied "unless it may be said with positive

17   assurance that the arbitration clause is not susceptible to an interpretation that covers

18   the asserted dispute." *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277,

19   1284 (9th Cir. 2009) (quoting *AT&T Tech., Inc. v. Communications Workers of Am.*,

20   475 U.S. 643, 650 (1986)). "Doubts should be resolved in favor of coverage." *Id.*

21   Consequently, as with any other contract, although courts often look to the parties'

22   intentions, "those intentions are generously construed as to issues of arbitrability."

23    

24       [1]  Although the Ninth Circuit in *Mundi*, given the facts before it, found that
the defendant could not compel the plaintiff to arbitrate her claims (*id.* at 1047), it

25   "did not articulate, as a general principle, the proposition that non-signatory
defendants may not compel arbitration of claims brought by a signatory plaintiff."

26   *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1176 (N.D. Cal.
2011) *motion to certify appeal granted*, C 07-05152 JW, 2012 WL 293703 (N.D.

27   Cal. Feb. 1, 2012). In fact, contrary to holding that non-signatory defendants may
not compel arbitration of claims by a signatory plaintiff, the *Mundi* Court stated that

28   a non-signatory defendant may "compel a signatory to arbitrate based on estoppel,"
and set forth the test through which to do so. *Mundi*, 555 F.3d at 1046.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

5

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

The FAA further provides that a Court must stay judicial proceedings, pending the outcome of the arbitration itself:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C.A. § 3 (West).  In light of these principles, the Court should compel Plaintiff to arbitrate his claims against AHM and stay this action as to Eagen pending the outcome of the arbitration.  *See id.*

## IV.  ARGUMENT

### A.  The "Clear and Unmistakable" Terms of the Purchase Agreement Allocate to the Arbitrator the Interpretation, Scope, and Applicability of the Arbitration Clause – Including Whether It Encompasses Claims Against AHM

In certain circumstances, courts assume that the parties to a contract intend for a court to decide such threshold matters as "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).  That assumption is rebutted where, as here, "the parties clearly and unmistakably provide otherwise" and agree to let the arbitrator decide such issues.  *AT&T Tech., Inc.*, 475 U.S. at 649; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, at *2 (N.D. Cal. May 4, 2005) ("[I]f the parties 'clearly and unmistakably' empowered an arbitrator to determine arbitrability, the [c]ourt must compel arbitration of the gateway issues as well.").  Where the parties have agreed to vest the arbitrator with authority to decide such threshold issues, "the courts will

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

6

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1   be divested of their authority and an arbitrator will decide in the first instance

2   whether a dispute is arbitrable." *United Broth. of Carpenters and Joiners of Am.,*

3   *Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996) (citing

4   *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th

5   Cir. 1990)).

6         Here, the language in the Purchase Agreement could not be more plain: Eagen

7   "clearly and unmistakably" agreed that the arbitrator would decide "**the**

8   **interpretation and scope of this Arbitration Clause, and the arbitrability of the**

9   **claim or dispute**." Mallow Decl., Ex. A at 6  (emphasis added).  Thus, such

10  threshold questions are for the arbitrator to resolve.  *See Anderson*, 2005 WL

11  1048700 at *2-3 ("[W]hen an arbitration clause is so broadly worded that it

12  encompasses disputes over the scope or validity of the contract in which it is

13  embedded, issues of the contract's scope or validity are for the arbitrators.") (citing

14  *Air Line Pilots Ass'n, Int'l v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir.

15  2002)).

16        Moreover, the presumption of arbitrability "is particularly applicable where

17  the clause is . . . broad," and in such cases, "[i]n the absence of any express

18  provision excluding a particular grievance from arbitration, . . . only the most

19  forceful evidence of a purpose to exclude the claim from arbitration can prevail."

20  *AT&T Tech., Inc.*, 475 U.S. at 650 (citations omitted).  The arbitration clause takes

21  the broadest possible form, applying to **all disputes** that "**arise[] out of or relate[]**

22  **to** your credit application, purchase or condition of this vehicle, this contract or any

23  resulting transaction **or relationship (including any such relationship with third**

24  **parties who do not sign this contract**)."  Mallow Decl., Ex. A at 6 (emphasis

25  added).  Notably, the Ninth Circuit has observed that the phrase "arising out of or

26  relating to" creates an arbitration clause that is "broad and far reaching" in scope.

27  *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1131 (9th Cir. 2000);

28  *see also Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir.1993) (holding

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

7

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

that such language is "routinely used in many securities and labor agreements to secure the broadest possible arbitration coverage.").

### B. The Arbitration Clause Explicitly Encompasses Disputes With Third Parties

Even if the Court is disinclined to refer the arbitrability determination to the arbitrator, it should nonetheless order arbitration pursuant to the very terms of the arbitration clause.  Eagen unequivocally agreed to arbitrate not only the interpretation and scope of the arbitration clause and the question of whether his claims are arbitrable, but also other matters, including any claims or disputes involving a "**relationship with third parties who do not sign this contract.**" Mallow Decl., Ex. A at 6 (emphasis added).  As such, there is no plausible argument that the arbitrator's threshold authority to decide arbitrability does not extend to the arbitrability of a dispute with a nonsignatory.

### C. AHM Can Enforce the Arbitration Clause Under the Doctrine of Equitable Estoppel

Consistent with the Second, Fourth, Fifth, Seventh, and Eleventh Circuits, the Ninth Circuit has recognized that equitable estoppel principles allow a nonsignatory to compel arbitration of a signatory's claims.  *See Mundi*, 555 F.3d at 1045-46.[2] District courts in the Ninth Circuit have recognized that equitable estoppel applies to permit a nonsignatory to compel arbitration "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory."  *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 840 (N.D. Cal. 2007) (compelling

---

[2]   *See also Choctaw Generation Ltd. P'ship.  v. Am. Home Assurance Co.*, 271 F.3d 403, 406-407 (2d Cir. 2001); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988); *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000); *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 839-41 (7th Cir. 1981); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir. 1999), *abrogated in part on other grounds by Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

8

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

arbitration on behalf of nonsignatory).

As the *Amisil* Court explained,

When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

Also, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Id.* (quoting *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006)).[3]

There is no question that both of these circumstances exist here: (1) Eagen's claims rely on or presume the existence of the Purchase Agreement; and (2) Eagen alleges substantially interdependent and concerted misconduct.  Thus, Eagen's claims against AHM must be arbitrated.

### 1. On Facts Analogous to Those in the Instant Case, Courts Have Applied the Doctrine of Equitable Estoppel and Compelled Arbitration

Federal Courts addressing the precise question raised herein have held that a nonsignatory automobile manufacturer, such as AHM, is entitled to enforce an arbitration clause in a purchase agreement under principles of equitable estoppel. *See, e.g.*, *Ford Motor Co. v. Ables*, 207 Fed. App'x 443, 448 (5th Cir. 2006); *Lau*,

---

[3]   *See also Lau v. Mercedes-Benz USA, LLC*, CV 11-1940 MEJ, 2012 WL 370557, at *4 (N.D. Cal. Jan. 31, 2012) (holding that equitable estoppel is applicable where the "signatory plaintiff relies on [the] contractual terms in its cause of action against a non-signatory defendant"); *Hansen v. KPMG LLP*, No. CV 04-10525 GLT, 2005 WL 6051705, at *2-3 (C.D. Cal. March 29, 2005); *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d at 1179 (holding that consumers were equitably estopped from refusing to arbitrate their claims against manufacturer because both of the requirements of "intertwining claims" and a "relationship" were satisfied); *In re Apple iPhone 3G Products Liab. Litig.*, MDL C 09-02045 JW, 2012 WL 1622643, at *9 (N.D. Cal. May 9, 2012) (same).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

9

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

2012 WL 370557 at *4; *Agnew v. Honda Motor Co., Ltd.*, No. CV 08-01433 DFH, 2009 WL 1813783, at *5 (S.D. Ind. May 20, 2009); *Goodwin v. Ford Motor Credit Co.*, 970 F. Supp. 1007, 1018 (M.D. Ala. 1997).

In *Lau*, the plaintiff purchased a Mercedes-Benz by executing a retail installment sales contract. *Lau*, 2012 WL 370557 at *1. Over the following several years, the plaintiff had numerous problems with the vehicle that could not be repaired, and he sued Mercedes-Benz, the manufacturer of the vehicle and a nonsignatory to the sales contract, for breach of express and implied warranties. *Id.* at *2. In response, Mercedes-Benz sought to compel arbitration pursuant to the arbitration clause contained in the sales contract executed by the plaintiff and the dealer who sold the vehicle. *Id.*

The Court addressed whether Mercedes-Benz, a nonsignatory to the sales contract, could compel arbitration under either equitable estoppel or agency theories. *Id.* at *3-6. The Court held that a nonsignatory could compel arbitration on a theory of equitable estoppel where the claims against the nonsignatory are "'intimately founded in and intertwined' with the underlying contract obligations." *Id.* at *4 (quoting *Boucher v. Alliance Title Co., Inc.,* 127 Cal. App. 4th 262, 271-72 (2005)). "In essence, the focus is placed on the claims asserted by the plaintiff, such that if a signatory plaintiff relies on contractual terms in its cause of action against a non-signatory defendant, the plaintiff is equitably estopped from repudiating the arbitration clause within the agreement." *Id.*

Mercedes-Benz argued that the plaintiff's claim for breach of express warranty relied on the terms of the sales contract. *Id.* at *3. The plaintiff argued in opposition that his lawsuit was not based on the sales contract, but instead stemmed from the alleged breach of the express warranty that was provided independently by Mercedes-Benz. *Id.* Unpersuaded by the plaintiff's arguments, the Court held that equitable estoppel applied because "[Plaintiff's] breach of express warranty claim [was] 'intimately founded in and intertwined' with the underlying purchase

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

10

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

agreement," emphasizing that the "issuance of the express warranty by Defendant stems from [plaintiff's] purchase of the subject vehicle." *Id.* at *4.

The Court further held that the plaintiff must "rely on [the] execution [of the retail installment sales contract] *in the first instance* to properly claim a breach of express warranty," and observed that the plaintiff had to rely on three terms of the sales contract to bring his claim for breach of warranty:

"(1) the 'Buyer,' term, which provides him standing to bring the claim;

(2) the 'Total Sale Price,' terms, which serves as a measure of restitution damages; and

(3) the 'Date of Sale,' term, which shows that the manufacturer's warranty is triggered." *Id.* (emphasis added).

These facts led the *Lau* Court to conclude that the "Plaintiff's breach of express warranty claim is founded in and intertwined with the [sales contract], which contains the arbitration agreement."[4]  *Id.*

In *Agnew v. Honda Motor Co., Ltd.*, the plaintiff sued American Honda Motor Co., XM Satellite Radio, and the plaintiff's car dealer, Penske Honda, alleging breach of express and implied warranties, violation of a state deceptive consumer sales statute, unjust enrichment, fraud, and constructive fraud, based on the defendants' alleged misrepresentations to the class that the vehicles were "XM Ready," when in fact, additional equipment, labor, and expenses were required for the XM radio to operate.  *Agnew*, 2009 WL 1813783 at *1.

In *Agnew*, the purchase agreement between the plaintiff and Penske Honda included a very broad arbitration clause that "cover[ed] all claims arising from or relating to the agreement or the relationships that result from the agreement" and expressly required that any such arbitration be brought as an individual case and not

---

[4]   Although the Court in *Lau* ultimately refused to compel arbitration because it found the arbitration clause to be unconscionable, based on its erroneous understanding of California state law, it nevertheless held that equitable estoppel was applicable under similar facts.  *Id.* at *11.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

11

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-CV-01377-SI

as a class action.[5]  *Id.*  Like AHM in the instant case, defendants Honda and XM were not parties to the purchase agreement.  *Id.*  Soon after the defendants removed the case to federal court, the plaintiff voluntarily dismissed her claims against Penske Honda.  *Id.* at *2.  Honda moved to compel arbitration and argued that the plaintiff was estopped from denying arbitration of her claims against Honda and XM because the plaintiff's claims against them depended on the purchase agreement, which included the arbitration clause.  *Id.*

The district court held that Honda, a nonsignatory to the contract with the arbitration clause, could compel arbitration under the doctrine of equitable estoppel, noting that the plaintiff could not claim the benefits of the contract yet simultaneously repudiate the arbitration clause in it.  *Id.* at *4-5.  Notably, it did not matter that the counterparty to the purchase agreement containing the arbitration clause, Penske Honda, was no longer a party to the lawsuit.  *Id.* at *5.  Rather, because the plaintiff's purchase of the vehicle was "essential to all of [her] claims," and the plaintiff's claims against Honda and XM arose under the purchase agreement, Honda, a nonsignatory, could compel the plaintiff to arbitrate her claims individually.  *Id.* at *4.  Accordingly, the Court granted Honda's motion to compel arbitration and stayed the proceedings.  *Id.* at *5.

---

[5]    The arbitration clause stated in pertinent part:

All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall, at the election of either party, be resolved by binding arbitration. . . .  Any claim or dispute is to be arbitrated on an individual basis, and not as a class action; and, you expressly waive any right you may have to arbitrate a class action.  The parties agree and understand that the arbitrator shall have all powers provided by the law and this Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief.

*Agnew*, 2009 WL 1813783 at *1.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

12

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

### 2.     Here, Plaintiff's Claims and Allegations "Presume the Existence of," "Arise out of" and "Relate Directly to" the Purchase Agreement

A plaintiff is estopped from avoiding arbitration compelled by a nonsignatory when, as here, the plaintiff's allegations and claims against the nonsignatory "make reference to," "presume the existence of," "arise out of," or "relate directly to" an agreement containing an arbitration clause.  *See Amisil*, 622 F. Supp. 2d at 840; *see also Lau*, 2012 WL 370557 at *4.  In this case, all of Eagen's claims make reference to and presume the existence of the Purchase Agreement.

Significantly, nothing in the test for equitable estoppel requires a plaintiff's claims to "enforce or challenge," *i.e.*, allege – *breach* of –, a specific clause in the underlying contract for equitable estoppel to apply.  A signatory's claims against a nonsignatory are properly deemed to "rely" on the terms of the contract when each of the claims "make reference to or presume the existence of the written agreement." *Amisil*, 622 F. Supp. 2d at 840.

The Fourth Circuit has agreed, stating that "[t]o be equitably estopped from denying the applicability of an arbitration clause, therefore, the signatory need not necessarily assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause."  *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627-28, 629 (4th Cir. 2006) (holding that the test for equitable estoppel "examine[s] whether the plaintiff has asserted claims in the underlying suit that, either **literally or obliquely**, assert a breach of a **duty** created by the contract containing the arbitration clause") (emphasis added).  Finding  equitable estoppel applicable, the Fourth Circuit held that, if the promissory note had never been issued, the plaintiff would have had no basis for recovery because each of the claims asserted – interference with contract, securities fraud and negligence, civil conspiracy, unjust enrichment and rescission, and other statutory violations – were based on an alleged breach of duties created by the note.  *Id.* at 630.  The same is

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

13

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-CV-01377-SI

true here.

Moreover, a number of courts have held that equitable estoppel is not limited to claims asserted in contract, but it applies to tort claims as well. *See*, *e.g.*, *Boucher*, 127 Cal. App. 4th at 272 ("That the claims are cast in tort rather than contract does not avoid the arbitration clause."); *Agnew*, 2009 WL 1813783 at *4 (same); *Am. Bankers Ins. Group*, 453 F.3d at 630 (same).  By definition, a tort claim asserted against a nonsignatory does not allege breach of an underlying contract.

The Southern District of California has applied equitable estoppel even when a plaintiff's claims made "no reference to any of the contracts containing arbitration provisions in his complaint."  *Robinson v. Isaacs*, 11CV1021 JLS RBB, 2011 WL 4862420, at *3 (S.D. Cal. Oct. 12, 2011).  Thus, it is well-established that claims asserted against nonsignatory defendants are subject to equitable estoppel if the claims arise out of the underlying contract, irrespective of whether a claim for breach of that underlying contract is asserted.

In the First Amended Class Action Complaint (the "FAC"), Eagen alleges claims for violation of the CLRA and UCL, breach of written warranty under the Magnuson-Moss Warranty Act, breach of express warranty under Cal. Com. Code § 2313, and unjust enrichment.  All of Eagen's  claims necessarily depend upon the Purchase Agreement because the purchase of a Honda Vehicle is a *prima facie* element of each of Eagen's claims.[6]

### a.   Eagen's Claim for Violation of the CLRA Arises Under the Purchase Agreement

To pursue a claim for violation of the CLRA, a party must plead and prove a "transaction"[7] for the sale or lease of goods and damages suffered.  Here, Eagen

---

[6]   Although AHM acknowledges that Eagen's claims are dependent upon Eagen having purchased a Honda Vehicle, AHM does not concede the viability or validity of any of Eagen's claims.

[7]   The CLRA defines "transaction" as "**an agreement** between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."  Cal. Civ. Code § 1761(e) (West) (emphasis added).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

14

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1  expressly alleges that he purchased a 2008 Honda Accord Sedan.  FAC, ¶ 56.

2  Eagen also alleges that AHM's practices, including, but not limited to, "unfair and

3  fraudulent business practices" caused Eagen to purchase his Honda Vehicle.  *See id.*,

4  ¶¶ 37, 92.

5         Eagen cannot dispute that the instrument through which he purchased AHM's

6  "goods," (*i.e.*, the 2008 Honda Accord Sedan) is the Purchase Agreement.  *See*

7  *generally* Mallow Decl., Ex. A.  Thus, Eagen's CLRA claim "presumes the

8  existence of" the Purchase Agreement.  Accordingly, because the purchase of a

9  Honda Vehicle, as embodied in the Purchase Agreement, is the "transaction" upon

10  which Plaintiff's CLRA claim is based, Plaintiff must arbitrate his CLRA claim

11  against AHM.  *See Amisil*, 622 F. Supp. 2d at 840-41.

12         b.    Eagen's Claim for Violation of the UCL Arises Under the
                 Purchase Agreement

13

14         Similarly, Eagen's UCL claim "presumes the existence of" and "directly

15  relates to" Eagen's  Purchase Agreement.  To bring a claim under the UCL, a

16  plaintiff must have "suffered injury in fact and [have] lost money or property as a

17  result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (West);

18  *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010).  Here, Eagen alleges that

19  AHM violated the UCL by "failing to disclose at the point of sale, the point of

20  repair, or otherwise, that the engine is defective."  FAC, ¶ 88.  The only basis on

21  which Eagen asserts that he has "suffered injury-in-fact and [has] lost money or

22  property" as a "direct and proximate result of AHM's unfair and fraudulent business

23  practices" is through the money he paid for the purchase of his Honda Vehicle.  *Id.*,

24  ¶ 92; *see also id.*, ¶¶ 103, 109.

25         Thus, if Eagen did not purchase his Honda Vehicle through the Purchase

26  Agreement, he could not allege the requisite "injury in fact" to support his UCL

27  claim.  Consequently, Eagen's UCL claim necessarily "presumes the existence of"

28  and "relates directly to" his Purchase Agreement.  As such, Eagen simply cannot

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

15

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

avoid arbitration of his UCL claim.  Moreover, to the extent that Eagen's UCL claim is premised on the finding of a violation of the CLRA, he must arbitrate his UCL claim against AHM.

      c.      <u>Eagen's Claims for Breach of Written Warranty and<br>Express Warranty Arise Under the Purchase Agreement</u>

Eagen brings two breach of express warranty claims against AHM: breach of written warranty under the Magnuson-Moss Warranty Act and breach of express warranty under Cal. Com. Code § 2313.  The Magnuson-Moss Warranty Act defines a "written warranty" as "any written affirmation of fact or written promise made **in connection with the sale of a consumer product by a supplier to a buyer**[.]"  15 U.S.C.A. § 2301 (West).  This language requires a sale to transpire between a supplier to the buyer and Eagen alleges that he is the "consumer[]"[8] (*Id.*, ¶ 95), AHM is the "supplier" (*Id.*, ¶ 96), and his Honda Vehicle is the "consumer product" within the meaning of section 2301(1)-(6) of the Magnuson-Moss Warranty Act (*Id.*, ¶ 97).

Under section 2313 of the California Commercial Code, express warranties are created by any "affirmation of fact or promise made by the seller to the buyer," "descriptions of the goods," and "sample or model," which is made part of the "basis of the bargain."  Cal. Com. Code § 2313 (West).  Here, Eagen alleges that "Honda provided all purchasers . . . of the [purported] Class Vehicles with the express warranties . . . which became part of the basis of the bargain."  FAC, ¶ 105.  Eagen further alleges that AHM breached the express warranties by selling and leasing Honda Vehicles with defective engines, and refusing to repair them free of charge, in accordance with the express warranties.  *Id.*, ¶¶ 99, 107.  In fact, Eagen expressly refers to AHM "selling and leasing Class Vehicles."  *Id.*, ¶ 107.

The allegations in the FAC demonstrate that Eagen cannot assert a claim for

---

[8]    "The term 'consumer' means a buyer. . . ."  15 U.S.C.A. § 2301 (West).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

16

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-CV-01377-SI

breach of written warranty or express warranty without relying on the existence and terms of the Purchase Agreement. For example, Eagen has to rely on at least three terms of the Purchase Agreement to assert his warranty claims against AHM:

(1) the "Buyer" term, which provides Eagen standing to bring the claim;

(2) the "Total Sale Price" term, which serves as a measure of restitution damages; and

(3) the "Date of Sale" term, which shows that the manufacturer's warranty is triggered. *See Lau*, 2012 WL 370557 at *4.

Similar facts led the *Lau* Court to conclude that the plaintiff must "rely on" the execution of the sales contract to bring breach of warranty claims. *Id.* There, the Court reasoned that without the sales contract with the dealer, there would be no vehicle purchase, and without that purchase, there would be no manufacturer's warranty. *Id.* The same holds true here.

To support his breach of express warranty claims, Eagen alleges that AHM issued an express warranty "with the purchase or lease of the [purported] Class Vehicles," (*Id.*, ¶¶ 99, 107) *i.e.*, in the course of Plaintiff's execution of the Purchase Agreements, and that it "**became part of the basis of the bargain**" (*Id.*, ¶ 105) (emphasis added). However, neither Eagen nor AHM signed the express warranties. Therefore, to establish that Eagen has an express warranty on which to sue AHM, he must rely on, at the very least, the "Buyer" term of the Purchase Agreement, which identifies him as the purchaser and memorializes the "bargain" that allegedly encompasses the express warranty. This is the exact reasoning that led the Court in *Lau* to conclude that equitable estoppel was applicable. *See Lau*, 2012 WL 370557 at *4.

In sum, all of Eagen's claims and allegations against AHM "presume the existence of," "arise out of" or "relate directly to" the Purchase Agreement. It is axiomatic that the purchase of a Honda Vehicle is a necessary element of the factual allegations made in the FAC. Without the Purchase Agreement, there would be no

LA2226584.1
218800-10002

basis for Eagen's claims against AHM. *See Amisil*, 622 F. Supp. 2d at 840; *see also Lau*, 2012 WL 370557 at *4. Eagen is, therefore, estopped from avoiding arbitration against AHM.

Eagen should be prevented from claiming the benefits of the contract yet simultaneously repudiating the arbitration clause in it. *See Mundi*, 555 F.3d at 1045 ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (internal quotations and citations omitted). The reason for this is simple and persuasive: a signatory to an agreement "cannot have it both ways. It cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Hughes*, 659 F.2d at 839 (internal quotation marks and citations omitted). Indeed, the endorsement of such an approach under state law would be preempted by the FAA: "States may not . . . decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995). Accordingly, this Court should hold that Eagen is equitably estopped from repudiating the arbitration clause and compel arbitration while staying his court action until after his claims are arbitrated.

### 3. Plaintiff Has Raised Allegations of "Substantially Interdependent and Concerted Misconduct" by AHM and Its Authorized Dealers

Eagen is also estopped from avoiding arbitration with AHM because he raises "allegations of substantially interdependent and concerted misconduct by" both a nonsignatory to the Purchase Agreement (*i.e.*, AHM) and a signatory to the Purchase Agreement (*i.e.*, San Leandro Honda, the AHM dealership). *See Hansen*, 2005 WL 6051705, at *2-3 (holding that equitable estoppel permits nonsignatories to compel arbitration because signatory-plaintiff plead interdependent and concerted misconduct by nonsignatories and signatories to the contract); *Amisil*, 622 F. Supp. 2d at 840. That Eagen has not named the dealer as a defendant in this action is of no

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

18

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1    consequence.

2          Throughout the FAC, Plaintiffs allege that through "interdependent and

3    concerted" misconduct by AHM and its authorized dealerships, AHM and its

4    dealerships (*i.e.*, a nonsignatory, and a signatory, respectively) fraudulently

5    concealed the alleged oil issue. *See, e.g.*, FAC ¶¶ 34-35, 41-42, 49-50 (alleging that

6    AHM "has actively concealed the defect from consumers," and the relationship

7    between AHM and its dealerships "ensured that all Class Vehicles were serviced

8    under [AHM's] direction and control and that warranty coverage was uniformly

9    denied"); *id.* ¶ 83 (alleging that AHM's concealment of the defect was "likely to

10   deceive reasonable consumers," AHM "intentionally concealed the defect with the

11   intent to defraud consumers," and AHM's "concealment of the defect harmed the

12   Plaintiffs and other Class members").

13         Where, as here, a signatory to an arbitration agreement asserts claims against

14   a nonsignatory and raises allegations of "substantial interdependent and concerted

15   misconduct" by the nonsignatory and the signatory, the plaintiff is estopped from

16   avoiding arbitration of all claims. *MS Dealer*, 177 F.3d at 947-48.

17         **D.    AHM Can Enforce the Arbitration Clause Because Its Subsidiary
18                 Entered Into the Purchase Agreement**

19         AHM can also compel Eagen to arbitrate his claims on a separate and distinct

20   basis because a party to the Purchase Agreement, AHFC, is AHM's agent.

21   According to Eagan's Purchase Agreement, San Leandro Honda assigned its rights

22   in the Purchase Agreement to AHFC – a wholly-owned subsidiary of AHM. *See*

23   Mallow Decl., Ex. A at 6.  As a result of the assignment, AHFC steps into the shoes

24   of and acquired all rights that San Leandro Honda had under the Purchase

25   Agreement, including the right to compel arbitration.  Accordingly, because AHM's

26   agent is a party to the Purchase Agreement, AHM can compel arbitration of Eagen's

27   claims.

28         The Northern District of California has articulated a three-part test to

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

19

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

determine whether a subsidiary is an agent for its parent corporation: (1) the parent manifests its intention that the subsidiary act on its behalf; (2) the subsidiary accepts the agency; and (3) both parties understand that the principal controls the undertaking. *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004) (citing *Rubin Bros. Footwear, Inc. v. Chemical Bank*, 119 B.R. 416, 422 (S.D.N.Y.1990)).

Here, each element is satisfied. AHFC is a wholly-owned subsidiary of AHM, which, as a captive in-house finance corporation, facilitates sales by providing retail financing to customers for the purchase and lease of Honda vehicles. Oborny Decl., ¶¶ 2-4. By the very nature of their relationship, it is clear that AHFC acts as AHM's agent.

Accordingly, as a nonsignatory principal, AHM has standing to enforce the arbitration clause to which AHFC is bound as a signatory. *See Garcia v. Stonehenge, Ltd.*, C-97-4368-VRW, 1998 WL 118177, at *3 (N.D. Cal. Mar. 2, 1998) (holding that principal could enforce contract entered into by agent). AHFC represents AHM, and "all of the rights and liabilities which would accrue to [AHFC] from transactions within such limit * * * accrue to [AHM]." *Id.* (citing Cal. Civ. Code § 2330). As such, AHM may claim the benefits of the Purchase Agreement, and the arbitration clause therein, that was assigned to its agent – AHFC. *Id.* (citing *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). Thus, the Court should enforce the arbitration clause according to its terms and Eagen must be compelled to arbitrate his claims against AHM.

## V.    CONCLUSION

For the foregoing reasons, AHM respectfully requests that the Court grant AHM's motion and compel Plaintiff Vince Eagen to arbitrate his claims against

///

///

///

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

20

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI

1  AHM.  AHM further requests that the Court stay these proceedings as to plaintiff

2  Eagen pending the outcome of such arbitration.

3  Dated:  June 8, 2012                    LOEB & LOEB LLP
                                           MICHAEL L. MALLOW
4                                          DENISE A. SMITH-MARS
                                           DARLENE M. CHO
5

6                                          By:    /s/ Michael L. Mallow
                                                Michael L. Mallow
7                                               Attorneys for Defendant AMERICAN
                                                HONDA MOTOR CO., INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2226584.1
218800-10002

21

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO.: 3:12-cv-01377-SI