1   Michael F. Ram, CSB #104805
    Email: mram@rocklawcal.com
2   RAM, OLSON, CEREGHINO
       & KOPCZYNSKI
3   555 Montgomery Street, Suite 820
    San Francisco, California 94111
4   Telephone: (415) 433-4949
    Facsimile: (415) 433-7311
5

6   Beth E. Terrell, CSB #178181
    Email: bterrell@tmdwlaw.com
7   Kimberlee L. Gunning, *Admitted Pro Hac Vice*
    Email: kgunning@tmdwlaw.com
8   TERRELL MARSHALL DAUDT & WILLIE PLLC
9   936 North 34th Street, Suite 400
    Seattle, Washington 98103-8869
10  Telephone: (206) 816-6603
    Facsimile: (206) 350-3528
11

12  [Additional Counsel Appear on Signature Page]

13  *Attorneys for Individual and Representative*
    *Plaintiffs Alex Soto and Vince Eagen*

14

15              UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
16

17  ALEX SOTO and VINCE EAGEN, on behalf       Case No. 3:12-cv-01377-SI
    of themselves and all others similarly situated,

18                                             **PLAINTIFFS' RESPONSE TO
                       Plaintiffs,             DEFENDANT'S MOTION TO
19                                             COMPEL ARBITRATION AND
           v.                                  STAY PROCEEDINGS**
20
    AMERICAN HONDA MOTOR CO., INC.,
21
                       Defendant.              Date:   Friday, October 5, 2012
22                                             Time:   9:00 a.m.
                                               Place:  10
23

24                                             CLASS ACTION

25                                             Complaint Filed: March 19, 2012

26

27

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION AND RELIEF REQUESTED ...........................................................1

II.   STATEMENT OF FACTS.............................................................................................2

      A.    AHM Manufactures, Markets, Distributes and Warrants the Vehicle
            Mr. Eagen Purchased and Agrees in Its Warranty Booklet that
            Consumers Can Sue It in Court ............................................................................2

      B.    Like Hundreds of Other Consumers, Mr. Soto and Mr. Eagen Became
            Aware of the Systemic Design Defect in Their Honda Vehicles Only
            After Purchasing the Vehicles; They Subsequently Filed This Case ...................4

      C.    Mr. Eagen's Finance Agreement and the Arbitration Clause It Contains.............5

      D.    The Arbitration Clause Does Not Specify Which Rules or Procedures
            Would Govern Arbitration Here...........................................................................7

      E.    The Relationship Between AHM and AHFC ......................................................8

III.  ARGUMENT .................................................................................................................9

      A.    Standards of Decision..........................................................................................9

      B.    The Court Decides Whether AHM Has Standing to Enforce the
            Arbitration Clause and Whether the Arbitration Clause Is
            Unconscionable ................................................................................................10

      C.    Mr. Eagen's Claims Against AHM Are Not Subject to the Arbitration
            Clause ................................................................................................................13

            1.    Mr. Eagen's Claims Against AHM Are Not Arbitrable Under
                  the Doctrine of Equitable Estoppel.........................................................14

            2.    Plaintiffs Have Not Alleged "Substantially Interdependent
                  and Concerted Misconduct" by AHM and Its Dealers Sufficient
                  to Hold AHM Has Standing to Compel Arbitration................................17

            3.    AHM Cannot Enforce the Arbitration Clause Based Solely on
                  the Fact that AHFC, a Subsidiary, Entered Into the Finance
                  Agreement with Mr. Eagen .................................................................18

D.    The Arbitration Clause Is Unconscionable...........................................................20

      1.    The Arbitration Clause Is Procedurally Unconscionable .......................21

      2.    The Arbitration Clause Is Substantively Unconscionable......................22

      3.    The Unconscionable Terms Cannot Be Severed ....................................24

IV.    CONCLUSION .............................................................................................................25

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Agnew v. Honda Motor Co., Ltd.*,
  No. 1:08-CV-01433-DFH-TAB, 2009 WL 1813783 (S.D. Ind. May 20, 2009)............16

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2007)...........................................................................18

*Anderson v. Pitney Bowes, Inc.*,
  No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005)..............................12

*AT&T Techs., Inc. v. Commc'ns Workers*,
  475 U.S. 643 (1986)......................................................................................................12

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004).........................................................................18

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) ........................................................................................21

*Britton v. Co-op Banking Grp.*,
  4 F.3d 742 (9th Cir. 1993) ............................................................................................13

*Butto v. Collecto Inc.*,
  845 F. Supp. 2d 491 (E.D.N.Y. 2012) ..........................................................................17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ......................................................................................12

*Cisneros v. Am. Gen. Fin. Servs.*,
  No. C 11-02869 CRB, 2012 WL 3025913 (N.D. Cal. July 24, 2012) ..........................20

*CompuCredit Corp. v. Greenwood*,
  132 S. Ct. 665 (2012) ......................................................................................................7

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996) ......................................................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...................................................................................................9, 10

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
 -- U.S. --, 130 S. Ct. 2847 (2010) ................................................................9

*Green Tree Fin. Corp. v. Bazzle,*
 539 U.S. 444 (2003) ........................................................................12

*Hansen v. KPMG, LLP,*
 No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)..........18

*Hawkins v. KPMG LLP,*
 423 F. Supp. 2d 1038 (N.D. Cal. 2006) ........................................................17

*Howsam v. Dean Witter Reynolds, Inc.,*
 537 U.S. 79 (2002) ........................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
 Nos. M07-1827 SI, 11-0058 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ..............17

*In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and*
 *Prods. Liab. Litig.,*
 828 F. Supp. 2d 1150 (C.D. Cal. 2011) ................................................*Passim*

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
 *and Prods. Liab. Litig.,*
 836 F. Supp. 2d 967 (C.D. Cal. 2012) ................................................*Passim*

*In re Van Dusen,*
 654 F.3d 838 (9th Cir. 2011) ........................................................11

*Kramer Motors, Inc. v. British Leyland, Ltd.,*
 628 F.2d 1175 (9th Cir. 1980) ........................................................18

*Lau v. Mercedes-Benz USA, LLC,*
 No. CV 11-1940 MEJ, 2012 WL 370557 (N.D. Cal. Jan. 31, 2012) ............................16

*Marmet Health Care Ctr., Inc. v. Brown,*
 132 S. Ct. 1201 (2012) ........................................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
 460 U.S. 1 (1983) ........................................................9

*MS Dealer Serv. Corp.,*
 177 F.3d 942 (11th Cir. 1999) ........................................................18

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) .......................................................................14

*Omstead v. Dell, Inc.*,
    594 F.3d 1081 (9th Cir. 2010) .......................................................................24

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    622 F. Supp. 2d 890 (N.D. Cal. 2009)...........................................................18

*Trompeter v. Ally Fin., Inc.*,
    No. C 12-00392 CW, 2012 WL 1980894 (N.D. Cal. June 1, 2012) ..............2, 22, 23, 25

*United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*,
    94 F.3d 1308 (9th Cir. 1996) .........................................................................12

**STATE CASES**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (Cal. 2000) ........................21

*Bruni v. Didion*,
    160 Cal. App. 4th 1272, 73 Cal. Rptr. 3d 395 (Cal. Ct. App. 2008)..............21

*Donavan v. RRL Corp.*,
    27 P.3d 702, 109 Cal. Rptr. 2d 807 (Cal. 2001) .............................................21

*Perdue v. Crocker Nat'l Bank*,
    702 P.2d 503, 216 Cal. Rptr. 345 (Cal. 1985) ................................................21

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523, 99 Cal. Rptr. 2d 824 (Cal. Ct. App. 2000) ..................19

*State ex rel. Ford Motor Co. v. Bacon*,
    63 S.W.3d 641 (Mo. 2002) ............................................................................19

*Trivedi v. Curexo Tech. Corp.*,
    189 Cal. App. 4th 387, 116 Cal. Rptr. 3d 804 (Cal. Ct. App. 2010) ........22, 24

**FEDERAL STATUTES**

9 U.S.C. § 2 .................................................................................................9, 10

9 U.S.C. § 4 ...............................................................................................................11

**STATE STATUTES**

Cal. Civ. Code § 1670.5(a) ......................................................................................20

# I. INTRODUCTION AND RELIEF REQUESTED

Plaintiffs Vince Eagen and Alex Soto are an owner and a former owner, respectively, of 2008 Honda Accords. On behalf of similarly situated current and former owners and lessees of 2008, 2009 and 2010 Honda Accords ("Class Vehicles"), Plaintiffs allege that the Class Vehicles suffer from a systemic design defect that results in burning motor oil at a much higher rate and in much greater quantities than intended. Class members are forced not only to replace the oil at a rate far exceeding their reasonable expectations but also to pay components damaged by the oil's corrosive byproducts. Notwithstanding hundreds of consumer complaints, Defendant American Honda Motor Co., Inc. ("AHM"), which manufactures, markets, distributes and warrants Honda vehicles in the United States, failed to disclose the defect to consumers and failed to honor its express warranties.

The Honda Warranty Booklet provided to Plaintiffs by AHM ("Warranty Booklet"), specifically permits consumers to file lawsuits against AHM, including class action lawsuits. Gunning Decl., Ex. A. Indeed, rather than attempting to restrict consumers' rights to arbitration as AHM seeks to do here, AHM's Warranty Booklet simply "encourage[s]" consumers to use a voluntary dispute resolution process "before, or instead of, going to court." *Id.* at PL-000-120814_000030. Notwithstanding consumers' explicit contractual right to proceed against AHM in court, AHM seeks to enforce an arbitration clause in an agreement it did not draft, authorize, or sign: Mr. Eagen's "Retail Installment Sales Contract" with the dealership where he purchased his Accord ("Finance Agreement").

AHM's contrived and cavalier approach to a promise it made to its customers was recently rejected by Ninth Circuit district courts in two recent cases against Toyota. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 836 F. Supp. 2d 967, 988-94 (C.D. Cal. 2012) ("*Toyota Unintended Acceleration*") (holding vehicle manufacturer may not invoke arbitration clause in form vehicle finance agreement when plaintiffs bring claims for breach of warranty and based on the vehicle manufacturer's

failure to disclose defect and manufacturer is not signatory to agreement); *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Prods. Liab. Litig.*, 828 F. Supp. 2d 1150, 1158-62 (C.D. Cal. 2011) ("*Toyota Hybrid Brake*") (same).

Based on an overbroad reading of the "delegation" language in the arbitration clause, AHM also attempts to strip this Court of its ability to determine whether AHM has standing to compel arbitration as a non-signatory. In *Toyota Unintended Acceleration*, interpreting the same delegation language, the court held this issue was properly decided by the Court. 836 F. Supp. 2d at 985.

Even if AHM's gambit to avoid its promise to consumers that they may proceed against it in court is successfully, the arbitration clause is unenforceable. As detailed below, it is procedurally and substantively unconscionable under well-established California law. A recent decision from this district denied a motion to compel arbitration relying on the same form vehicle purchase agreement at issue here. *Trompeter v. Ally Fin., Inc.*, No. C 12-00392 CW, 2012 WL 1980894, at *7 (N.D. Cal. June 1, 2012).

Plaintiffs respectfully request that the Court follow the recent well-reasoned decisions in *Toyota Unintended Acceleration*, *Toyota Hybrid Brake* and *Trompeter* and deny AHM's motion to compel arbitration and stay proceedings.

## II. STATEMENT OF FACTS

**A. AHM Manufactures, Markets, Distributes and Warrants the Vehicle Mr. Eagen Purchased and Agrees in Its Warranty Booklet that Consumers Can Sue It in Court**

AHM manufactures, markets and distributes Honda Accord vehicles in the United States, which it advertises to consumers as safe and reliable. *See* First Amended Class Action Complaint (Doc. #1) ("FAC") ¶¶ 13-14. AHM[1] also provides owners and lessees of the Honda Accord vehicles with three warranties: a New Vehicle Limited Warranty, a Powertrain Limited

---

[1] The Warranty Booklet states "Honda Automobile Division, a division of American Honda Motor Co., Inc. [AHM] gives these warranties on behalf of American Honda" and the Warranty Booklet is copyrighted by AHM. Gunning Decl., Ex. A at PL-000-120814_000024-28.

Warranty and a Federal Emissions Warranty. *Id.* ¶¶ 15-17; *see also* Gunning Decl., Ex. A at PL-000-120814_000036-43. The New Vehicle Limited Warranty provides that AHM will, free of charge, "repair or replace any part that is defective in material or workmanship under normal use[,]" for 3 years or 36,000 miles, "whichever comes first." *Id.* at PL-000-120814_000036. The Powertrain Limited Warranty covers the vehicles' "[c]ylinder block and head and all internal parts,…valve covers, oil pan, oil pump, intake and exhaust manifolds,…engine/powertrain control module,…[and] seals and gaskets." *Id.* at PL-000-120814_000037. As with the New Vehicle Limited Warranty, the Powertrain Limited Warranty provides that AHM "will repair or replace any part that is defective in material or workmanship under normal use for 5 years or 60,000 miles, whichever comes first." *Id.* Finally, as required by 42 U.S.C. § 7541, AHM provides a Federal Emissions-Related Design and Defect Warranty, which, among other things requires AHM to "warrant[] that [each Class Vehicle]…is designed, built, and equipped to conform at the time of sale with all applicable emissions standards," and "is free from defects in materials and workmanship that would cause it to fail to confirm with applicable emissions standards"; "is free from defects in materials and workmanship that would cause it to fail to conform with applicable emissions requirements during the specified time and mileage period" (at least 3 years or 36,000 miles); and to diagnose and make repairs of specified components, including spark plugs and parts associated with the ignition system free of charge. *Id.* at PL-000-120814_000040, 51.

The Warranty Booklet includes a voluntary dispute resolution process and makes clear that consumers can sue AHM in court. Gunning Decl., Ex. A at PL-000-120814_000029-30. First, AHM suggests that consumers discuss their concerns with the dealership. If their concerns are not resolved, they should call "Honda Automobile Customer Service[,]" and then, the "BBB AUTO LINE," an "independent forum run by the Council of Better Business Bureaus." *Id.* at PL-000-120814_000029. "BBB AUTO LINE's purpose is to resolve disputes between vehicle manufacturers and their customers." *Id.* at PL-000-120814_000030. Any

decision by BBB AUTO LINE "is not binding" and AHM does not require consumers to file a claim with BBB AUTO LINE if they wish to file a lawsuit in court. *Id.* Rather, AHM merely "encourage[s]" consumers to use BBB AUTO LINE's mediation and arbitration services "before, or instead of, going to court." *Id.*

**B. Like Hundreds of Other Consumers, Mr. Soto and Mr. Eagen Became Aware of the Systemic Design Defect in Their Honda Vehicles Only After Purchasing the Vehicles; They Subsequently Filed This Case**

As noted above, the alleged design defect in the Class Vehicles results in the vehicles burning motor oil at a much higher rate and in much greater quantities than intended. FAC ¶ 1. This vastly increased oil consumption causes damage to many of the engine's parts, including the spark plugs. *Id.* Hundreds of consumers have publicly complained about this defect. *Id.* ¶¶ 5, 30. It is reasonable to infer that far more have simply complained to Honda's dealers.

Plaintiffs purchased 2008 Honda Accords in October 2008. FAC ¶¶ 38, 56. They were not told of the design defect, but later, after driving only 31,000 and 20,000 miles respectively, they noticed the vehicles' excess oil consumption. *Id.* ¶¶ 39, 57. The dealerships to which each Plaintiff took his vehicle did not repair or otherwise remedy the problem. *Id.* ¶¶ 40-55, 57-66. On March 19, 2012, Plaintiffs filed this class action lawsuit, alleging that AHM (1) failed to disclose the defect to consumers at the point of sale, the point of repair, or ever; (2) breached its express warranties; and (3) was unjustly enriched. *See generally* FAC. The FAC includes claims for violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* and of California Business and Professions Code § 17200 *et seq.* (for AHM's unlawful, unfair, and fraudulent business practices); for breach of written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* and under Cal. Comm. Code § 2313. *Id.* ¶¶ 76-115. Plaintiffs have brought no claims alleging breach of the Finance Agreement or arising from any unfair, unlawful or fraudulent conduct in connection with it. *See generally* FAC. Nor have they brought claims against AHFC or against the dealerships. AHM has

answered the FAC. (Doc. #15). The same day, AHM filed a motion to compel arbitration and stay proceedings as to Mr. Eagen only. (Doc. #16).

**C.    Mr. Eagen's Finance Agreement and the Arbitration Clause It Contains**

Mr. Eagen purchased his 2008 Honda Accord from San Leandro Honda and financed the purchase through this dealership. Mallow Decl. (Doc. #17), Ex. A. Near the top of the first page of the Finance Agreement, it explains that "you" is "the Buyer (and Co-Buyer, if any)," in this case, Mr. Eagen. *Id.* "We" or "Us" is the "Creditor-Seller." *Id.* The Creditor-Seller is San Leandro Honda, which assigned its interest in the Finance Agreement to AHFC per the signatures directly below the arbitration clause in the Finance Agreement. *Id.* Thus, AHFC is the "we" or "us" in the Finance Agreement.

The Finance Agreement is a form agreement, published by The Reynolds and Reynolds Company ("Reynolds & Reynolds").[2] Indeed, AHFC and AHM's Rule 30(b)(6) designee testified that not only had she never read the entire form agreement, she "[didn't] know anybody who has read the entire contract, lawyer or nonlawyer." Gunning Decl., Ex. B (30(b)(6) Deposition of AHM and AHFC ("30(b)(6) Dep.") at 19:12-13; *id.* at 20:18-20.

In addition to the arbitration clause (discussed in detail below), the Finance Agreement contains "Other Important Agreements" including an explanation of how finance charges are calculated, how payments are applied and the buyer's "promises." Mallow Decl., Ex. A. The buyer's "promises" include his or her agreement (1) to pay the amount owed under the Finance Agreement "even if the vehicle is damaged, destroyed, or missing"; (2) "not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease or transfer any interest in the vehicle or

---

[2] In very small print at the bottom of the Finance Agreement (p. 6 of the Mallow Declaration), the Finance Agreement has the notation "Form No. 553-CA-ARB" and indicates the form is copyrighted by Reynolds & Reynolds. Mallow Decl., Ex. A. Mr. Soto's Retail Installment Sale Contract, also a Reynolds & Reynolds form agreement, does <u>not</u> include an arbitration clause. Gunning Decl., Ex. G.

this contract without our written permission"; and (3) "to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract." *Id.*

Significantly, the Finance Agreement includes a warranty disclaimer: "If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose." Mallow Decl., Ex. A. The disclaimer makes clear, however, that it "does not affect any warranties covering the vehicle that the vehicle manufacturer may provide." *Id.*

At the very end of the Finance Agreement is an arbitration clause. Mr. Eagen was provided with the form Finance Agreement on a "take it or leave it" basis and was given no opportunity to negotiate any of its standard terms, including the inclusion of the arbitration clause and any specific terms of the arbitration clause, except for the interest rate. Declaration of Vince Eagen ("Eagen Decl.") ¶¶ 4-5. As noted above, <u>AHFC</u> is the Creditor-Seller, the "we" or "us" in the Agreement. The arbitration clause states that arbitration is required for "[a]ny claim or dispute…<u>between you and us</u> or our employees, agents, successors or assigns…." *Id.* (emphasis added). The arbitration clause does <u>not</u> provide that arbitration is required for claims or disputes between "you" and "our parent company" or between "you" and AHM. *Id.* The scope of the clause with respect to "claims or disputes" is defined as

> "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)….

*Id.* Notably, the arbitration clause does not encompass claims or disputes with "third parties who do not sign this contract[,]" only claims or disputes that arise out of "any resulting transaction or relationship…with third parties who do not sign this contract[.]" *Id.*

The arbitration clause provides a limited right to appeal the arbitrator's decision under three specific circumstances. Mallow Decl., Ex. A. First, a "party may request a new arbitration under the rules of the arbitration organization under a three-arbitrator panel" if "the arbitrator's award for a party is $0." *Id.* Second, a party may request review by a three-arbitrator panel if the award is against that party and "in excess of $100,000[.]" *Id.* Finally, if an award against a party includes injunctive relief, it may appeal to a three-arbitrator panel. *Id.*

### D. The Arbitration Clause Does Not Specify Which Rules or Procedures Would Govern Arbitration Here

The arbitration clause provides that arbitration shall be conducted pursuant to the "applicable rules" of the chosen "arbitration organization[.]" Mallow Decl., Ex. A. While the arbitration clause explains that a consumer may choose the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") "or any other organization that you may choose[,]" NAF no longer conducts consumer arbitrations[3] and the consumer's choice of "any other organization" is "subject to [the Creditor-Seller's] approval." *See id.* Thus, the "applicable rules" of AAA are the best indicator of the procedures that would govern arbitration in this case, to the extent those procedures apply; the arbitration clause states that "[i]f the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of the Arbitration Clause will control." *Id.*

AAA's website currently includes 78 different sets of rules, procedures, and supplemental procedures. Gunning Decl. ¶¶ 5-6; *id.*, Ex. D. There are two sets of rules and procedures potentially applicable here: the "Commercial Arbitration Rules" and the "Consumer-Related Disputes Supplementary Procedures." *Id.* The latter are procedures as a supplement to the Commercial Arbitration Rules. *Id.*, Ex. E; Ex. F, C-1. The AAA "ha[s] the

---

[3] *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 677 n.2 (2012) (noting that "[i]n 2009, after the Attorney General of Minnesota filed an action alleging that NAF had engaged in numerous violations of consumer-protection laws, NAF entered into a consent decree barring it from handling consumer arbitrations").

discretion to apply or not to apply the Supplemental Procedures[.]" *Id.*, Ex. F, "Introduction." In sum, the arbitration clause does not make clear which arbitral forum the Creditor-Seller will ultimately choose. Nor does it specify which rules will apply. And it states that notwithstanding the arbitral forum's rules, the terms of the arbitration clause will trump any such rules in the event of a conflict. Mr. Eagen was not provided with a copy of any rules that would govern a future arbitration conducted pursuant to the arbitration clause. Eagen Decl. ¶ 5.

With respect to the right to appeal the arbitrator's decision, while the arbitration clause explains that the Creditor-Seller "will advance [the consumer's] filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2,500[,]" this advance is for the initial arbitration and not the appeal. An appealing consumer would be required to front <u>all</u> appellate costs, not just her own. *See* Mallow Decl., Ex. A ("The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."). AAA's minimum fees for a three-arbitrator panel include a $2,800 initial filing fee, a $1,250 "final fee" plus the hourly rate for each of three arbitrators. Gunning Decl. Ex. E, p. 55. By contrast, appealing a district court's decision to the Ninth Circuit would require a $455 filing fee.[4]

**E.    The Relationship Between AHM and AHFC**

AHFC is a wholly-owned subsidiary of AHM. Gunning Decl., Ex. C (AHM Discovery Responses) at 5:22. As AHFC's parent company, AHM has delegated the duty to AHFC to "provide[ ] financing to facilitate the sale of Honda and Acura vehicles." Gunning Decl., Ex. B at 30:9-12. Accordingly, AHFC provides financing for consumers (for loans and for leases) and for Honda dealers. *Id.* at 25:12-22. Consumers purchasing Honda vehicles, however, are not required to finance their purchase through AHFC. *Id.* at 26:13-16.

---

[4] *See* Ninth Circuit Fee Schedule, available at
http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000559.

AHFC does not manufacture vehicles, nor is it involved in vehicle design.  Gunning Decl., Ex. B at 16:13-19.  It does not participate in the design of advertisements for Honda vehicles, nor does it take part in the decision-making process with respect to disclosing defects to consumers.  *Id.* at 17:1-8.  AHFC does not respond to consumer complaints about Honda vehicles, but refers any such complaints to AHM.  *Id.* at 27:18-24.  AHM, not AHFC, addresses warranty issues for Honda vehicles.  *Id.* at 28:3-9.  In keeping with this separation of responsibilities, when AHFC takes assignment of a consumer's financing contract AHM does not review the contract before the assignment takes place.  *Id.* at 31:4-13.

## III. ARGUMENT

### A.  Standards of Decision

The Federal Arbitration ACT ("FAA") governs whether arbitration agreements in contracts involving interstate commerce are valid and enforceable.  *See* 9 U.S.C. § 2.  "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, -- U.S. --, 130 S. Ct. 2847, 2856 (2010).  First, the court "must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."  *Id.*  A threshold issue is whether the party seeking to invoke the arbitration clause has standing to do so.  *See, e.g., Toyota Hybrid Brake*, 828 F. Supp. 2d at 1165, n.9 ("Because the Court finds that the principle of equitable estoppel does not apply to permit Toyota to arbitrate…the Court does not reach Plaintiffs' argument that the arbitration provision in the Finance Agreements [is] procedurally and substantively unconscionable").

The FAA "create[s] a body of federal substantive law of arbitrability[.]"  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Courts interpreting arbitration agreements, however, "should apply ordinary state-law principles" of contract law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  While states cannot refuse to enforce arbitration agreements based on state laws that apply <u>only</u> to arbitration agreements,

"generally applicable contract defenses, such as fraud, duress, or unconscionability" may be applied. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also* 9 U.S.C. § 2 (providing that courts may refuse to enforce an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract").

Here, while the Court's review of the arbitration clause is guided by the FAA, there can be no dispute that California contract law applies to the Court's determination of whether the arbitration clause is valid and enforceable "upon such grounds as exist at law or in equity for the revocation of any contract." A choice of law provision in the Finance Agreement provides that "[f]ederal law and California law apply to this contract." Mallow Decl., Ex. A, ¶ 6, "Applicable Law." In light of this standard, as explained below, the Court should deny AHM's motion to compel arbitration of Mr. Eagen's claims.

## B. The Court Decides Whether AHM Has Standing to Enforce the Arbitration Clause and Whether the Arbitration Clause Is Unconscionable

Under the FAA, whether an arbitration agreement binds a non-signatory is a "gateway dispute" that is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002) (alteration in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)); *see also First Options*, 514 U.S. at 942-46; (holding that issue of whether nonsignatory agreed to arbitrate was a question of arbitrability for the court). Any "delegation provision" in an arbitration agreement purporting to provide to the contrary must also "be a 'clear and unmistakable' expression of the parties' intent to submit to arbitration the issue of arbitrability." *Toyota Unintended Acceleration*, 836 F. Supp. 2d at 982. Delegation provisions must be interpreted in the context of the FAA's statutory language. *See id.* at 983 (noting that "the Court's role is limited where the parties have entered in to an agreement to arbitrate" but that "[i]it is the Court's role to interpret and apply the FAA. The Court cannot abdicate that role…The Court must comply with the dictates of the statutory text of the FAA"); *cf. In re Van*

*Dusen*, 654 F.3d 838, 844-45 (9th Cir. 2011) (noting that "when confronted with an arbitration clause, the district court must first consider whether the agreement at issue is of the kind covered by the FAA"). Thus, as recently held in *Toyota Unintended Acceleration*, "the fact that…[d]efendants are not parties to the arbitration provision[ ] <u>or</u> the delegation provision[ ] fundamentally alters the relevant analysis" of the delegation provision. 838 F. Supp. 2d at 984 (concluding court, not arbitrator, decides if non-signatories may enforce arbitration clauses).

Honda's claim that the Court must "allocate to the arbitrator the interpretation, scope and applicability of the arbitration clause," based on the delegation clause, *see* Def.'s Mem. at 6, is incorrect. First, the language of the delegation clause makes no reference to the "applicability" of the arbitration clause; all that is referenced is "the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute[.]" Mallow Decl., Ex. A. Second, and more important, the threshold question "is not whether [Mr. Eagen's] claims fall within the scope of the Finance Agreement[ ] but <u>whether the parties here are subject to the arbitration provision contained in the [Finance Agreement]</u>." *Toyota Hybrid Brake* 828 F. Supp. 2d at 1159 (emphasis added). Before turning to interpretation of a delegation clause, the Court must first decide whether the arbitration clause is covered by the FAA. *See In re Van Dusen*, 654 F.3d at 844-45. Part of that analysis is whether the party seeking to compel arbitration is indeed "[a] <u>party aggrieved</u> by the alleged failure, under a written agreement to arbitration[.]" 9 U.S.C. § 4 (emphasis added).

Here, as in *Toyota Unintended Acceleration*, the arbitration clause in the form Finance Agreement does not clearly and unmistakably provide who is to determine which parties are bound by it. *See also Toyota Hybrid Brake*, 828 F. Supp. 2d at 1159 n.5 (explaining that "[w]hile parties may agree to explicit provisions enabling the arbitrator to decide issues on the applicability and scope of an arbitration agreement, these provisions are part of the agreement and only apply to signatories….thus, the threshold issue of whether Toyota, as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Finance Agreements must be decided

by this Court") (citing *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) and *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009)). Honda cannot rely on the FAA's "presumption of arbitrability" with respect to this threshold issue because "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement…." *Comedy Club*, 553 F.3d at 1277 (internal citations omitted).

The cases AHM relies upon to support its claim that an arbitrator, not the Court, must decide whether the arbitration clause encompasses claims against AHM are inapposite as to non-signatories. None of these cases analyzes whether the party seeking to compel arbitration was a "party aggrieved" for purposes of the FAA. Indeed, in AHM's cases, the party seeking to compel arbitration was either a signatory to the arbitration clause, or had been validly assigned the right to enforce it. *See, e.g., Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451 (2003) (disputed issue was whether arbitration agreement between plaintiff and defendant forbid class arbitration ); *AT&T Tech.,* 475 U.S. at 646-47 (arbitration clause in collective bargaining agreement between employer and union; issue was whether parties intended to arbitrate certain type of grievance); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, at *2 (N.D. Cal. May 4, 2005) (arbitration agreement between employee and employer); *United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1309-10 (9th Cir. 1996) (arbitration clause in collective bargaining agreement between employer and union; issue was whether parties intended to arbitrate certain type of grievance); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131-32 (9th Cir. 2000) (arbitration clause between defendant and plaintiff corporations; issue was whether dispute regarding res judicata effect of prior arbitration was dispute relating to "enforceability or performance" of agreement). In only one case that AHM relies upon for the principle that "the phrase 'arising out of or relating to' creates an arbitration clause that is 'broad and far reaching' in scope[,]" does the court consider whether the party seeking to compel arbitration had standing, and that court concluded that "because [the defendant] <u>was not a party to the</u>

agreement," he could not "invoke the right to arbitrate unless he could show that "(1) he is a third party beneficiary of the contract; (2) he is a successor in interest to the contract; or (3) he is an agent, officer, and employee of [the company that was a signatory to the contract]." *Britton*, 4 F.3d at 744 (affirming district court's order that defendant lacked standing to invoke arbitration clause). Here, AHM does not claim it is a third party beneficiary of the Finance Agreement, a successor in interest to it, or an agent of AHFC.

AHM also claims the arbitrator has authority to determine whether "a dispute with a non-signatory" is arbitrable based on language in the arbitration clause which purportedly extends the arbitrator's jurisdiction to "any claims or disputes involving a 'relationship with third parties who do not sign this contract.'" Def.'s Mem. at 8. As noted above, however, the FAA's language requires the <u>court</u> to determine whether the party seeking to invoke the arbitration clause is indeed a "party aggrieved."

For these reasons, the Court, not an arbitrator, must determine whether Honda is a "party aggrieved." As in *Toyota Hybrid Brake*, "the threshold issue of whether [the defendant car manufacturer], as a non-signatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court." 828 F. Supp. 2d at 1159 n.5.

**C.    Mr. Eagen's Claims Against AHM Are Not Subject to the Arbitration Clause**

"The right to compel arbitration stems from a contractual right[,]" which "may not be invoked by one who is not a party to the agreement [to arbitrate] and does not otherwise possess the right to compel arbitration." *Britton*, 4 F.3d at 744. In certain, very limited circumstances, "equitable estoppel and agency principles may permit non-signatories to compel arbitration." *Toyota Unintended Acceleration*, 838 F. Supp. 2d at 980-81 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101-02 (9th Cir. 2006)).

AHM raises both arguments here, claiming that Mr. Eagen is equitably estopped from resisting arbitration of his claims and that AHM can compel arbitration because its subsidiary and purported "agent," AHFC, is a party to the Finance Agreement. As detailed below, AHM

does not meet the requirements of the equitable estoppel doctrine and AHFC is not AHM's agent with respect to the issues here. Thus, it cannot enforce the arbitration clause in the Finance Agreement. Indeed, AHM is subject to an entirely different dispute resolution procedure, as set forth in the Warranty Booklet, which does not require binding arbitration and tells consumers that they can sue AHM in court. AHM is claiming the benefits of the Warranty Booklet while simultaneously trying to avoid the burdens the contract imposes.

      1.    <u>Mr. Eagen's Claims Against AHM Are Not Arbitrable Under the Doctrine of Equitable Estoppel</u>

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously trying to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009) (internal citations and marks omitted) (affirming denial of motion to compel arbitration pursuant to an arbitration clause in loan agreement between plaintiff and bank; defendant was not signatory to loan agreement but was issuer of insurance policy plaintiff purchased to cover the loan). Whether a party should be equitably estopped from resisting arbitration turns on whether her claims are "intertwined with the contract providing for arbitration" or "arise out of or relate directly to" that contract. *Id.*

Here, Mr. Eagen's claims are not intertwined with and do not arise out of the Finance Agreement. Mr. Eagen has not brought a claim for breach of the Finance Agreement claim or alleged the dealership failed to disclose its terms. The allegations here all arise from AHM's failure to disclose the defect in the Class Vehicles and its breach of the warranties set forth in the Warranty Booklet. The Finance Agreement also includes a warranty disclaimer, and thus, Mr. Eagen is not relying on any provision of the agreement in asserting his claims. *See Toyota Hybrid Brake*, 828 F. Supp. 2d at 1161-62 (noting that purchase agreements "expressly distinguish a warranty claim against [manufacturer] from a claim against the dealerships").

Moreover, AHM's argument that Mr. Eagen's claims "presume the existence of" the Finance Agreement is incorrect. Consumers purchasing Honda vehicles are <u>not</u> required to

finance their purchases through AHFC. Gunning Decl., Ex. B at 26:13-16. Indeed, dealerships accept other forms of payment: check, cash, or credit card. *Id.* at 26:19-27:5. AHM can provide no authority – and there is none – that a consumer alleging breach of warranty and statutory consumer claims against AHM based on defects in his or her vehicle <u>must</u> be party to a "Retail Installment Sale Contract."

As noted above, two recent decisions from Ninth Circuit district courts rejected the same equitable estoppel argument AHM makes here. *See Toyota Unintended Acceleration*, 836 F. Supp. 2d at 991-994; *Toyota Hybrid Brake*, 828 F. Supp. 2d at 1159-62. With respect to the breach of warranty claims against Toyota, the *Toyota Unintended Acceleration* court held that "[e]quitable estoppel does not require arbitration of Plaintiffs' warranty claims because the customer agreements with the arbitration provisions are <u>not</u> related to the performance of the vehicle." 836 F. Supp. 2d at 991. Indeed, as is the case here, those plaintiffs' breach of warranty claims "[were] subject to an <u>entirely separate, and non-binding</u>" dispute resolution provision. *Id.* (emphasis added); *compare* Gunning Decl., Ex. A at PL-000-120814_000030. As in *Toyota Unintended Acceleration*, "it would simply be inequitable to compel a party to settle a dispute by binding arbitration when he or she agreed to settle those disputes" using another procedure. *Id.* at 991-92. Indeed, AHM should be equitably estopped from denying the language in the Warranty Booklet.

Nor do Mr. Eagen's statutory consumer claims arise from the terms of the Finance Agreement or any duty owed by the dealership or by AHFC as assignee of that agreement. The "operative document at issue is not the Finance Agreement[] but [AHM's] marketing materials containing the purported false representations" and omissions regarding the Class Vehicles. *See Toyota Hybrid Brake*, 828 F. Supp. 2d at 1161 (explaining that plaintiffs' statutory consumer claims do not arise from purchase agreements but are based on Toyota's failure to disclose the defect).

1  AHM largely relies on two unpublished cases in which courts held that vehicle

2  manufacturers – including AHM – could compel arbitration based on arbitration clauses in

3  consumers' agreements with dealerships.  *See* Def.'s Mem. at 10-12 (citing *Lau v. Mercedes-*

4  *Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 WL 370557 (N.D. Cal. Jan. 31, 2012) and *Agnew*

5  *v. Honda Motor Co., Ltd.*, No. 1:08-CV-01433-DFH-TAB, 2009 WL 1813783 (S.D. Ind. May

6  20, 2009)).  In *Lau*, the court held that absent the purchase agreement with the dealer – which

7  contained the arbitration clause – the plaintiff would not have purchased the vehicle, and

8  without the purchase, there would be no vehicle to warranty.  2012 WL 370557, at *4.  (The

9  *Lau* plaintiff did not bring statutory consumer protection claims).[5]  In *Agnew*, the court granted

10  AHM's motion to compel arbitration of warranty claims as well as a statutory consumer claim

11  based on a similar "but for" analysis.  2009 WL 1813783, at *4.  As the court explained in the

12  better reasoned *Toyota Unintended Acceleration*, "[a] mere 'but for' test does not supply the

13  'intimately…intertwined' relationship upon which equitable estoppel is dependent."  838

14  F. Supp. 2d at 993.  Moreover, the *Agnew* plaintiff also named the dealership as a defendant,

15  further supporting an argument that her claims were "intertwined" with the purchase

16  agreement.  2009 WL 1813783, at *2.

17  As the opinions in *Toyota Unintended Acceleration* and *Toyota Hybrid Brake* suggest,

18  if estoppel applies whenever the underlying claims relate to the contract, no matter how

19  attenuated that relationship is, then the only claims to which estoppel does not apply are those

20  that would fall outside the scope of the arbitration clause anyway.  In other words, AHM's

21  interpretation of equitable estoppel suggests that non-signatories can enforce an arbitration

22  clause whenever a signatory can enforce an arbitration clause, thus eliminating any distinction

23  between non-signatories and signatories.  AHM's equitable estoppel argument should be

---

[5] In *Lau*, notwithstanding the court's decision that the non-signatory Honda entity could compel arbitration, the court ultimately denied the motion to compel arbitration because "the arbitration clause in the [Retail Sale Installment Contract] is both procedurally and substantively unconscionable."  2012 WL 370557, at *11.

rejected. Mr. Eagen does not rely on the terms of the Finance Agreement to assert his claims and simultaneously seek to avoid its arbitration clause. If any party's actions are inequitable here, it is AHM's, which attempts to evade the unambiguous dispute resolution provision in its own Warranty Booklet, which permits consumers to file class actions in this court.

      2.   <u>Plaintiffs Have Not Alleged "Substantially Interdependent and Concerted Misconduct" by AHM and Its Dealers Sufficient to Hold AHM Has Standing to Compel Arbitration</u>

A non-signatory may enforce an arbitration agreement against a signatory where the signatory alleges "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *See Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006) (internal citation and marks omitted).[6]

Here, AHM points to allegations in the FAC that AHM "directed its dealerships' service departments to maintain its campaign of active concealment" of the defect and that the relationship between AHM and its authorized dealerships "ensured that all Class Vehicles were serviced under [AHM's] direction and control and that warranty coverage was uniformly denied." Def.'s Mem. at 19.

AHM's argument is not supported by the FAC. None of the cited portions of the FAC concern "<u>substantially</u> interdependent and concerted misconduct" between AHM and its dealerships. In fact, aside from allegations mentioning Plaintiffs' purchase of their vehicles from the dealerships and return visits for service to their vehicles, and complaints from other consumers regarding the Class Vehicles, there are only two paragraphs out of 115 in the FAC that even mention the dealerships. The allegation that AHM provided direction (and marketing

---

[6] In a recent decision, cited approvingly by another court, this Court denied defendants' attempts to "bootstrap their way into arbitration" by making a similar argument. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M07-1827 SI, 11-0058 SI, 2011 WL 4017961, at *5 (N.D. Cal. Sept. 9, 2011); *see Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 498 (E.D.N.Y. 2012) (same) (citing *TFT-LCD*, 2011 WL 4017961, at *5). These cases illustrate the extreme care courts must exercise before reading an arbitration clause broadly, particular when doing so is dispositive of important legal rights.

materials) to the dealerships, and that the Class Vehicles were serviced under AHM's <u>direction</u> and <u>control</u>, concern <u>AHM's</u> unlawful and deceptive actions. The Court should conclude that AHM has no grounds to compel arbitration based on supposed "substantially interdependent and concerted misconduct." *See Toyota Hybrid Brake*, 828 F. Supp. 2d at 1162 (reaching same conclusion based on nearly identical allegations in consumers' complaint against vehicle manufacturer).[7]

> 3.  <u>AHM Cannot Enforce the Arbitration Clause Based Solely on the Fact that AHFC, a Subsidiary, Entered Into the Finance Agreement with Mr. Eagen</u>

"Whether an agency relationship exists between a parent corporation and its subsidiary is normally a question of fact." *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1241 (N.D. Cal. 2004). The fact that one party is a subsidiary of the other is not dispositive as to whether the subsidiary is the parent company's agent. *See, e.g., Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (holding no agency relationship between parent and subsidiary notwithstanding that directors of parent sat on subsidiary's board of directors and parent guaranteed subsidiary's financial obligations). The principal's day-to-day control of the subsidiary with respect to <u>specific</u> tasks is key to the agency determination. *See Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 897-99 (N.D. Cal. 2009). The parent company "must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the

---

[7] AHM's cases are distinguishable. *See Hansen v. KPMG, LLP*, No. CV 04-10525-GLT (MANx), 2005 WL 6051705, at *3 (C.D. Cal. Mar. 29, 2005) ("Plaintiff describe[d] the non-signatory Defendants as one team involved in a single course of misconduct…and seeks to hold them jointly liable for each other's conduct" and alleged a signatory and non-signatory defendants "entered into an agreement and conspiracy between themselves to fraudulently induce Plaintiff"); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 840-41 (N.D. Cal. 2007) (noting that "defendants focus on the first kind of equitable estoppel. That is…[the plaintiff's] claims against [them] all make reference to or presume the existing of" the agreement containing the arbitration clause"); *MS Dealer Serv. Corp.*, 177 F.3d 942, 948 (11th Cir. 1999) (plaintiff brought claims against both signatory dealership and non-signatory vehicle financing company "based on the same facts" and which "are inherently inseparable").

subsidiary's day-to-day operations in carrying out that policy." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 542, 99 Cal. Rptr. 2d 824, 838-39 (Cal. Ct. App. 2000). In the context of a relationship between a vehicle manufacturer and a subsidiary company that provides consumer financing, at least one court has held that because the financing entity did not have "the power to alter legal relations between [the parent] and any third party[,]" it was not the manufacturer's agent. *See State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 644 (Mo. 2002).

Here, AHM relies on one fact to support its claim that AHFC is AHM's agent: that AHFC is AHM's subsidiary and, "as a captive in-house finance corporation, facilitates sales by providing retail financing" to consumers who buy Honda vehicles. Def.'s Mem. at 20 ("By the very nature of their relationship, it is clear that AHFC acts as AHM's agent"). AHM has not met its burden of proof. It is undisputed that AHFC has <u>no</u> involvement in the manufacture, design, marketing or warranting of Honda vehicles. Gunning Decl., Ex. B at 16:13-10, 17:1-8, 27:18-24, 28:3-9. Any purported agency relationship is limited to the <u>financing</u> of Honda vehicles, and even in that realm, when AHFC takes assignment of a consumer's financing contract AHM does not review the contract before the assignment takes place. *Id.* at 31:4-13. And, AHFC has not shown that it has "the power to alter legal relations" between AHM and consumers like Mr. Eagen with respect to the claims at issue here. AHFC cannot alter the terms of the AHM warranty, nor has AHM delegated responsibility for warranty service, marketing and other consumer disclosures to AHFC. Nor is there anything unusual in the parent-subsidiary relationship between AHM and AHFC that warrants binding AHM to agreements to which <u>AHFC</u> is a party. *See id.* at 37:19-38:8, 40:16-41:14 (AHM and AHFC's corporate designee testifying there is nothing unusual about parent-subsidiary relationship between the two entities); *cf Helm v. Alderwoods Grp.*, 696 F. Supp. 2d 1057, 1069 (N.D. Cal. 2009) ("In order to prove that a parent company is directly liable for the acts of its subsidiaries,

a plaintiff must do more than show that the parent and subsidiary share a board of directors"). The Court should reject AHM's agency argument.

**D.    The Arbitration Clause Is Unconscionable**

An arbitration agreement is unenforceable if it is unconscionable under state common law principles.  *See Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012) (per curiam) (remanding case to state court to determine whether arbitration clause is unconscionable "under state common law principles that are not specific to arbitration").  This is true even after the Supreme Court's decision in *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011).  *See Marmet*, 132 S. Ct. at 1203 (quoting *Concepcion* and explaining that it is only "'[w]hen state law prohibits outright the arbitration of a particular type of claim" that "'[t]he conflicting rule is displaced by the FAA'"); *Cisneros v. Am. Gen. Fin. Servs.*, No. C 11-02869 CRB, 2012 WL 3025913, at *4 (N.D. Cal. July 24, 2012) (noting that "[a]rbitration agreements…are still subject to unconscionability analysis post-*Concepcion*"; denying motion to compel arbitration because arbitration clause in consumer agreement was procedurally and substantively unconscionable).

Generally applicable California law provides that courts may decline to enforce a contract when, "at the time it was made[,]" it was unconscionable or "may enforce the remainder of the contract without the unconscionable clause[.]"  Cal. Civ. Code § 1670.5(a). "[U]nconscionability has both a procedural and substantive component[.]"  *Cisneros*, 2012 WL 3025913, at *4 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (Cal. 2000) (internal citation and marks omitted)).  "While procedural unconscionability focuses on the element of oppression or surprise due to unequal bargaining power, substantive unconscionability centers on overly harsh or one-sided results." *Id*. (internal citation and marks omitted).  California law requires that both types of unconscionability be present for a court to refuse to enforce a contract but "they need not be present to the same degree."  *Id.*  (internal citation and marks omitted).  California Supreme

Court decisions make clear that the unconscionability analysis is <u>not</u> limited to arbitration clauses and that "any" contractual term "may be unconscionable." *See Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 512, 216 Cal. Rptr. 345, 354 (Cal. 1985) (applying unconscionability analysis to term in checking account agreement governing NSF charges); *Donavan v. RRL Corp.*, 27 P.3d 702, 723, 109 Cal. Rptr. 2d 807, 832 (Cal. 2001) (explaining that "an unconscionable contract ordinarily involves both a procedural and a substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results"; holding rescission was proper remedy when enforcement of contract would be unconscionable). As detailed below, the arbitration clause in the Finance Agreement is both procedurally and substantively unconscionable.

      1.    <u>The Arbitration Clause Is Procedurally Unconscionable</u>

Procedural unconscionability focuses on how the contract was negotiated and the parties' circumstances when entering into the contract. *See Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288, 73 Cal. Rptr. 3d 395, 409 (Cal. Ct. App. 2008). The "oppression" element "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* (internal citation and marks omitted). "Surprise," for procedural unconscionability purposes, "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (internal citation and marks omitted).

Procedurally unconscionable contracts are generally "contract[s] of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113. As the Ninth Circuit recently explained, "[C]alifornia law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).

Here, the Finance Agreement Mr. Eagen signed is a form agreement published by Reynolds & Reynolds. Mallow Decl., Ex. A. As several courts have concluded, this form agreement is indisputably an adhesion contract. *See, e.g., Trompeter*, 2012 WL 1980893, at *3; *Lau*, 2012 WL 1980894, at *8-9. As in those cases, the Finance Agreement was presented to Mr. Eagen on a "take it or leave it" basis and he was given no opportunity to negotiate any of its terms, including inclusion of the arbitration clause and any specific terms of the arbitration clause, except for the interest rate. Eagen Decl. ¶¶ 4-5. Instead, Mr. Eagen had to accept the arbitration clause or reject the Finance Agreement in its entirety.

In addition, "the failure to provide a copy of the arbitration rules to which [Mr. Eagen] would be bound[ ] support[s] a finding of procedural unconscionability." *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393, 116 Cal. Rptr. 3d 804, 808 (Cal. Ct. App. 2010) (citing cases; noting that defendant's "failure to give [the plaintiff] a copy of the AAA rules was no trifling matter. The rules extend over 26 single-spaced pages"). Here, the arbitration clause merely referred consumers to contact AAA[8] or visit its website to find the AAA rules. Mallow Decl., Ex. A. In addition, the arbitration clause does not state which of AAA's rules and procedures would apply. *See id.* The task of locating potentially applicable rules and procedures on AAA's website is a multi-step process. Gunning Decl. ¶ 5. Moreover, while AAA has "Consumer-Related Disputes Supplementary Procedures," it explains that it "will have the discretion to apply or not apply the Supplementary Procedures [.]" *Id.*, Ex. F, "Introduction." Failure to provide Mr. Eagen with a copy of the precise rules and procedures that would govern a future arbitration further increases the procedural unconscionability.

2.    The Arbitration Clause Is Substantively Unconscionable

Substantive unconscionability focuses on whether the results of enforcement of a contract term are "unfairly one-sided." *Trompeter*, 2012 WL 1980894, at *4. Here, while the

---

[8] As noted in Section II. D. above, the arbitration clause also provides for arbitration through NAF; NAF, however, no longer entertains consumer arbitrations.

terms of the arbitration clause may appear facially neutral, the practical effect of the terms discussed below works to the advantage of AHM – at the expense of consumers – assuming, of course, that AHM has standing to invoke arbitration.

First, the arbitration clause's provision allowing re-arbitration if the arbitrator's award exceeds $100,000 only benefits AHM. When an arbitration clause contains appeal provisions that "turn on an award threshold," without a "commercially legitimate reason for the threshold requirement" and "the party that imposed the arbitration agreement was the party that set the threshold," a reasonable conclusion is "that the party that imposed the threshold did so with the knowledge or belief that it would generally be a defendant who could benefit from a right to appeal limited to high value awards. *Trompeter*, 2012 WL 1980894, at *5 (citing *Little v. Auto Stiegler Inc.*, 20 Cal. 4th, 1064, 1073, 63 P.3d 979, 984-85 (Cal. 2003)).

Second, the arbitration clause's provision allowing re-arbitration if the arbitrator awards injunctive relief also only benefits AHM. If AHM wants to enjoin a consumer from using his or her vehicle, they can repossess the vehicle without resort to arbitration. *See* Mallow Decl., Ex. A (providing Creditor-Seller with the right to repossess vehicle without waiving right to arbitration). If a consumer wants injunctive relief, as Mr. Eagen requests here, he or she must submit the claim to arbitration. Thus, this term also only benefits AHM: if injunctive relief is awarded against it, it can delay the effect of the injunction by electing to re-arbitrate and continue to engage in its unlawful conduct.

Third, the financial burden on the appealing party benefits AHM at consumers' expense. While the arbitration clause explains that the Creditor-Seller "will advance [the consumer's] filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2,500[,]" this advance is for the initial arbitration and not the appeal.[9] An appealing consumer would be required to front all appellate costs, not just his

---

[9] Honda's promise to advance $2,500 for the initial arbitration is less generous than it sounds. In cases where a consumer has "nonmonetary claims," such as claims for injunctive relief, the "Initial Filing Fee" is $3,350 and the "Final Fee" is $1,250." Gunning Decl. Ex. E, pp. 53-54.

or her own. *See* Mallow Decl., Ex. A ("The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."). This is an unsustainable burden for most consumers given the minimum fees for a AAA three-arbitrator panel include a $2,800 initial filing fee, a $1,250 "final fee" plus the hourly rate for each of the three arbitrators. Gunning Decl. Ex. E, p. 55. By contrast, appealing a district court's decision to the Ninth Circuit Court of Appeals would require a filing fee of $455. Moreover, any potential for fee-shifting if the consumer prevails is mooted by the arbitration clause, which provides that "[i]f the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control." Mallow Decl., Ex. A. At best, then, if he or she prevails in arbitration, the consumer will pay several thousand dollars for half of the arbitration costs. The unconscionability is heightened because the costs involved are trebled, given the three-arbitrator panel, and the requirement that the costs be <u>advanced</u> up front rather than paid in installments. Such a provision places an unduly harsh burden on one party.

Finally, the arbitration clause provides that the selection of the arbitral forum is within AHM's exclusive control. While it explains the consumer may pick NAF, AAA, "or any other organization that you may choose[,]" NAF no longer conducts consumer arbitrations and the consumer's choice of "any other organization" is "subject to [Honda's] approval." *See* Mallow Decl., Ex. A. While Honda reserves the right to disapprove of any non-AAA arbitration provider the consumer may choose, the consumer does not have this right. This factor contributes to the substantive unconscionability of the arbitration clause.

> 3. <u>The Unconscionable Terms Cannot Be Severed</u>

A district court has discretion not to sever unconscionable portions of an arbitration agreement. *See Omstead v. Dell, Inc.*, 594 F.3d 1081, 1087 (9th Cir. 2010); *see also Trivedi*, 189 Cal. App. 4th at 398 (noting that under Cal. Civ. Code § 1670.5(a), a trial court may "refuse to enforce an entire agreement if it is 'permeated' by unconscionability").

Here, the arbitration clause is permeated with unconscionability, as set forth above. As one court explained, reviewing the same form arbitration clause, "the agreement is tainted with illegality, and to enforce it would encourage overreaching by creditors drafting consumer contracts." *Trompeter*, 2012 WL 1980894, at *7 (internal citation and marks omitted). Moreover, because some of the unconscionable provisions "relate directly to circumstances in which the right of appeal attaches…they are not collateral to the agreement and extirpating them by means of severance would amount to a reformation of the agreement." *Id.* The Court should decline to re-write the arbitration clause.

## IV. CONCLUSION

For the above reasons, Plaintiffs respectfully request the Court deny Defendant's motion to compel arbitration and stay proceedings as to Plaintiff Vince Eagen.

RESPECTFULLY SUBMITTED AND DATED this 4th day of September, 2012.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Kimberlee L. Gunning, *Admitted Pro Hac Vice*
    Beth E. Terrell, CSB #178181
    Email: bterrell@tmdwlaw.com
    Kimberlee L. Gunning, *Admitted Pro Hac Vice*
    Email: kgunning@tmdwlaw.com
    936 North 34th Street, Suite 400
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603

    Michael F. Ram, CSB #104805
    Email: mram@rocklawcal.com
    RAM, OLSON, CEREGHINO
     & KOPCZYNSKI
    555 Montgomery Street, Suite 820
    San Francisco, California 94111
    Telephone: (415) 433-4949

Steven N. Berk
Email: steven@berklawdc.com
Matthew J. Bonness, CSB #229226
Email: matt@berklawdc.com
BERK LAW PLLC
2002 Massachusetts Ave., NW, Suite 100
Washington, DC 20036
Telephone: (202) 232-7550

Lawrence Deutsch, *Admitted Pro Hac Vice*
Email: ldeutsch@bm.net
Shanon Carson, *Admitted Pro Hac Vice*
Email: scarson@bm.net
Eugene Tompkins, *Admitted Pro Hac Vice*
Email: gtompkins@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3062

*Attorneys for Individual and Representative Plaintiffs*
*Alex Soto and Vince Eagen*

## CERTIFICATE OF SERVICE

I, Kimberlee L. Gunning, hereby certify that on September 4, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Michael L. Mallow, CSB #188745
> Email: mmallow@loeb.com
> Darlene M. Cho, CSB #251167
> Email: dcho@loeb.com
> LOEB & LOEB LLP
> 10100 Santa Monica Blvd., Suite 2200
> Los Angeles, California 90067
> Telephone: (310) 282-2000
> Facsimile: (310) 282-2200
>
> *Attorneys for Defendant*

DATED this 4th day of September, 2012.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Kimberlee L. Gunning, *Admitted Pro Hac Vice*

Kimberlee L. Gunning, *Admitted Pro Hac Vice*
Email: kgunning@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

*Attorneys for Individual and Representative Plaintiffs Alex Soto and Vince Eagen*