IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX SOTO and VINCE EAGEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | No. C 12-1377 SI<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION** |

Defendant American Honda Motor Co., Inc. ("AHM") filed a motion to compel arbitration and stay proceedings as to plaintiff Vince Eagen. The Court finds this matter appropriate for disposition without oral argument. *See* Civil Local Rule 7-1(b). Having considered the parties' papers and the evidentiary record, the Court hereby DENIES defendant's motion.

**BACKGROUND**

Plaintiffs Vince Eagen and Alex Soto current or former owners of 2008 Honda Accord automobiles manufactured by defendant AHM. Plaintiffs allege that the vehicles suffer from a systemic design defect that results in burning motor oil at a faster rate than intended. They alleged five causes of action in their First Amended Complaint: (1) that the Honda Accord had an undisclosed material defect in violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (2) that AHM's failure to disclose the defect constituted an unlawful, unfair, and fraudulent business practice in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) that AHM breached its written warranty in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (4) that AHM breached its express warranty in violation of Cal. Comm. Code § 2313; and (5) that AHM was unjustly enriched in

the sale of the defective vehicles.

When Vince Eagen purchased his vehicle, he signed an Installment Sale Contract with the dealership San Leandro Honda, which assigned its rights in the contract to American Honda Finance Corp., Inc. ("AHFC"). The Installment Sale Contract contained an arbitration clause.[1]

The Installment Sale Contract between Eagen and AHFC provides in pertinent part: "Either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial." Declaration of Michael L. Marlow in Support of Motion to Compel Arbitration ("Marlow Decl."), Exh. A at 6. The parties do not dispute that the "you" referred to in the contract is Eagen and the "we" is AHFC, but not AHM. The arbitration clause covers "[a]ny claim or dispute . . . between you or us or our employees, agents, successors or assigns," and which arises out of, *inter alia*, the condition of the vehicle or "any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." *Id.* The arbitration clause states that "the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute" must be decided by the arbitrator and not by the courts. *Id.*

Defendant AHM, which was not a signatory to the Eagen/AHFC Installment Sale Contract, now seeks to compel arbitration of Eagen's claims.

**LEGAL STANDARD**

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

---

[1] When plaintiff Alex Soto purchased his vehicle, did not sign an arbitration agreement. Defendant's motion to compel arbitration is directed only at plaintiff Vince Eagen.

2

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-478 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Accordingly, the Court reviews plaintiff's arbitration agreement in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, and considers the enforceability according to the laws of the state of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

3

**DISCUSSION**

The main issue to be decided in this motion is whether defendant AHM, as a third party non-signatory, can assert the arbitration clause against Eagen. It argues three alternative grounds in its motion to compel arbitration: (1) the Installment Sale Contract directly incorporates third parties; (2) under the principle of equitable estoppel, AHM can compel arbitration pursuant to the Installment Sale Contract because Eagen must rely on the contract to assert his claims; and (3) under an agency theory, it may compel arbitration because AHFC signed the arbitration agreement as AHM's agent. As an initial matter, Defendant AHM also argues that the question of whether they may compel arbitration as a third-party nonsignatory must be decided by the arbitrator and not the courts.

**1.    The Court's Authority to Determine the Parties Covered by the Contract**.

When parties empower the arbitrator to decide certain threshold issues in a delegation clause, the courts are divested of the authority to decide those issues. *United Broth. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996). The "question of arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably* provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) (emphasis added). Thus, the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2779 (2010). This scheme "merely reflects the principle that arbitration is a matter of contract." *Id.* at 2776.

Here, the Installment Sale Contract grants the arbitrator the authority to decide the threshold issues of "the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute." Marlow Decl., Exh. A at 6. However, the threshold issue of whether the delegation clause is even applicable to a certain party must be decided by the Court. The provisions granting authority to the arbitrator to decide issues of scope are by definition are only applicable to the parties of the

4

agreement. Thus, the Court must first decide which parties are bound by delegation clause, before the arbitrator can decide the interpretation and scope of the arbitration clause. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Products Liab. Litig.*, 828 F. Supp. 2d 1150, 1159 (C.D. Cal. 2011) (finding that the defendant "cannot invoke the right to the benefits of the Purchase Agreement because it was not a party to the agreement; thus, the threshold issue of whether [the defendant], as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court"); *accord In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Lit.*, 838 F. Supp. 2d 967, 987 (C.D. Cal. 2012). None of the cases cited by AHM in support of its position counsel otherwise.

### 2. The Contract's Direct Reference to Third Parties.

Defendant AHM first agues that the terms of the arbitration agreement directly incorporate third parties. In support of this assertion, AHM points to the portion of the Arbitration Clause that outlines the scope of arbitration, which covers any dispute which arises out of, *inter alia*, "any *resulting transaction or relationship* (including any such relationship with third parties who do not sign this contract)." Marlow Decl., Exh. A at 6 (emphasis added). AHM argues that it is covered by this clause of the agreement. However, this clause is inapposite. AHM's relationship with Eagen began at the moment he bought his Accord, and thus could not be a "resulting" relationship that occurred afterward. This clause is more properly understood to refer to a secondary sale of the car, and not the relationship with the manufacturer AHM.

### 3. AHM's Authority to Compel Arbitration Under an Equitable Estoppel Theory.

The Ninth Circuit has recognized that third parties may enforce an arbitration agreement under ordinary contract and agency principles, including equitable estoppel and agency. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). In the arbitration context, the Ninth Circuit has recognized two types of equitable estoppel. The first type is inapplicable, because it concerns a signatory seeking

5

to compel a nonsignatory to arbitrate. *Mundi v. Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). The second type allows a nonsignatory to compel arbitration against a signatory if there is both a "close relationship between the entities involved," and a "relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *Id.* (citing *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Resin and Fiber Intermediates, S.A.S.*, 269 F.3d 187, 201 (3rd Cir. 2009). Thus, the Court must inquire whether there is a "close relationship" between AHM and AHFC, and whether the plaintiffs' claims are "intertwined" with the Installment Sale Contract.

First, it is clear that there is a close relationship between the entities because AHFC is a wholly-owned subsidiary of AHM. *See In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1178 (N.D. Cal. 2011) (finding a close relationship between Apple and AT & TM even in the absence of a parent-subsidiary relationship).

Second, the Court looks to the relatedness of the plaintiffs' claims with the Installment Sale Contract. "In conducting this inquiry, the Court must keep in mind that this is an equitable test–one designed to ensure fairness by forcing a party who reaps the benefits of an agreement to accept the agreement's accompanying burdens." *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 838 F. Supp. 2d at 991 (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527-28 (5th Cir. 2000).

The plaintiffs' five causes of action are based on products liability claims arising from an alleged defect that causes the Honda Accord to use motor oil too rapidly. These claims rely on AHM's warranties and marketing materials. They do not rely on any terms or conditions in the Installment Sale Contract, which covers Eagen's financing and insurance obligations. Indeed, the Installment Sale Contract expressly disclaims such warranties, stating that "the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose." Marlow Decl., Exh. A at 4. Thus, the plaintiffs' claims cannot rely on the Installment Sale Contract, but must rely on warranties issued by AHM.

Defendant AHM argues that because Eagen's claims rely on the purchase of his vehicle, he will need to use the Installment Sale Contract to show that he entered into a transaction when he purchased the car. However, AHM "mistakenly equates the mere purchase of the vehicles and the mere fact that Plaintiffs executed a purchase agreement with the interrelatedness between Plaintiffs' claims and the obligations in the Purchase Agreements." *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 828 F. Supp. 2d at 1161; *accord In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 838 F. Supp. 2d at 991. Eagen need not rely on the Installment Sale Contract to prove his purchase of the vehicle, or for the ultimate success of his claims.

Defendant's reliance on recent cases from this district are inapposite. In *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, (N.D. Cal. 2011), and in *In re Apple iPhone 3G Products Liab. Litig.*, 2012 WL 1622643 (N.D. Cal. 2012), the courts found an intertwining between the claims against Apple and the AT & TM service contracts. However, in those cases the subscribers' warranty allegations against the manufacturer necessarily implicated the provider's network and wireless services agreement. *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d at 1178 (plaintiffs themselves contended that their claims arose from their AT & TM service contracts); *In re Apple iPhone 3G Products Liab. Litig.*, 2012 WL 1622643, at *7. Indeed, in *In re Apple iPhone 3G Products Liab. Litig.*, the court distinguished *In re Toyota Motor Corp. Unintended Acceleration Mktg.* because the Toyota purchase agreement explicitly disclaimed any warranties, while the AT & TM service agreement expressly included a limited warranty. 2012 WL 1622643, at *7.

The Court finds that AHM cannot use the Installment Sale Contract to compel arbitration under an equitable estoppel theory.

**4.     AHM's Authority to Compel Arbitration Under an Agency Theory.**

The Ninth Circuit has indicated that, in certain circumstances, a nonsignatory can compel a signatory to arbitrate based on agency principles. *See Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (finding a nonsignatory agent of a signatory principal can compel arbitration

7

against a signatory). But the claims must "relate to or arise out of the contract containing the arbitration clause." *Britton v. Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir.1993) (finding that the agent's wrongdoing did not relate to the contract and therefore declining to compel arbitration); *see also Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir.1993) ("The *Letizia* court noted that brokers and employees were integral to, if not directly responsible for, the alleged statutory violations of the principal corporation.").

Courts have generally applied the agency principle to prevent parties from evading arbitration obligations by suing a signatory's agents instead of the principal. *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990); *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 833 (N.D. Cal. 2007). Given this purpose, some courts have declined to apply the agency principle to compel where, as here, the nonsignatory is the principal and not the agent. *See Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1055 (D. Or. 2007) (finding that an agency relationship generally does not, alone, justify departure from the principle that a nonsignatory may not be compelled to arbitrate without the related purpose of avoiding a nullification of the arbitration agreement). *But see Garcia v. Stonehenge, Ltd.*, 1998 WL 118177 (N.D. Cal. Mar. 2, 1998) (finding that a non-signatory principal may compel arbitration under general contract and agency principles, but failing to consider the purpose of the agency principle).

Even assuming that the agency principle applies to a nonsignatory principal and not just nonsignatory agents, the plaintiffs still fail in their agency claim. AHFC is a wholly-owned subsidiary of AHM and acts as its captive in-house finance corporation. However, AHFC's agency relationship to AHM is limited to the financing of Honda vehicle sales and leases; it has no involvement with AHM's design and manufacture of vehicles. Moreover, the Installment Sale Contract relates to the financial obligations of the buyer, and expressly disclaims any warranties. Thus, because Eagen's warranty and products liability claims do not arise from or relate to the Installment Sale Contract, AHM cannot compel arbitration under an agency theory.

**CONCLUSION**

Therefore, because AHM as a third-party nonsignatory may not compel arbitration under the terms of the contract, an equitable estoppel theory, or an agency theory, the Court DENIES defendant's Motion to Compel Arbitration and Stay Proceedings as to Plaintiff Vince Eagen. (Docket 19).

**IT IS SO ORDERED.**

Dated: October 3, 2012

SUSAN ILLSTON
United States District Judge